Edwin H. ESLER and John B. Stone, Plaintiffs,

v.

NORTHROP CORPORATION, American Standard, Inc., Retirement Plan of American Standard, Inc. and Retirement Plan for Salaried Employees of Northrop Corporation, Defendants.

Civ. No. 20537–B.

United States District Court, W. D. Missouri, W. D.

Dec. 14, 1979.

Byron J. Beck, P. John Owen and T. Nelson Mann of Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for plaintiffs.

Lonnie J. Shalton and William L. Hubbard of Popham, Conway, Sweeny, Fremont & Bundshu, Kansas City, Mo., for defendants Northrop Corp. and Retirement Plan for Salaried Emp. of Northrop Corp.

Landon H. Rowland and Danny R. Carpenter of Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendants American Standard, Inc. and Retirement Plan of American Standard, Inc., and participating subsidiary companies.

James W. Benjamin of Field, Gentry, Benjamin & Robertson, Kansas City, Mo., for defendant American Standard, Inc.

ORDER CERTIFYING "RULE OF 75" CLAIMANTS AND "RULE OF 80" CLAIMANTS AS PLAINTIFF CLASS PURSUANT TO F.R.CIV.P. 23(b)(3)

WILLIAM H. BECKER, Senior District Judge.

Edwin H. Esler and John B. Stone (plaintiffs) bring this action against American Standard, Inc. (ASI), Retirement Plan of American Standard, Inc. (ASI Plan), Northrop Corporation (Northrop), and Retirement Plan for Salaried Employees of Northrop Corporation (Northrop Plan), alleging violations of pension rights.

In Count I plaintiffs seek to recover benefits and to enforce rights under the pension plan for salaried ASI employees on their own behalf and on behalf of a proposed class described as the "Rule of 80 Class".

In Count II plaintiff Esler alleges violations by Northrop of the provisions of the Welfare and Pension Plans Disclosure Act, 29 U.S.C. §§ 308(b) and (c). He seeks damages and declaratory relief individually and as representative of a proposed class of former ASI employees described as the "Wilcox Class."

In Count III plaintiffs seek to recover benefits, enforce rights and clarify rights to future benefits under the pension plan for salaried employees of Northrop individually and on behalf of the proposed subclass of the Wilcox class described as the "Vested Wilcox Class."

In Count IV plaintiffs on their own behalf allege that they relied upon false representations by ASI and Northrop of pension benefits, to their detriment.

Plaintiffs have moved for certification of Counts I, II, and III of this action as class actions. The parties have conducted extensive discovery, and have filed lengthy briefs, affidavits and stipulations of fact on the issue of certification. A plenary hearing on the class action issues was held on June 15, 1978, at which time the parties were given an opportunity to present evidence and stipulations of fact. Oral argument on the class certification issue was heard at that time. Later, additional briefs, formal and informal, were filed. The extensive discovery and briefing have provided a complete development of the facts and the legal contentions relating to the class issues.

In Count I of their First Amended Complaint and later in their "Outline of Plaintiffs' Position Concerning Certification of This Action As A Class Action" [hereinafter Outline], filed at the time of the hearing and arguments on the class action issues, plaintiffs Esler and Stone request certification of a "Rule of 80 Class" defined as "salaried employees who, as of the sales date of the facility where they worked, had combined years of age and service equal to or exceeding eighty or if an employee was

then fifty-five years of age, had combined years of age and service equal to seventy-five." (Outline at 2.)

Elsewhere it appears that each member of the proposed class working at a covered facility sold during the period July 1, 1969 (the date the ASI Plan was first extended to such facilities), through June 30, 1972, inclusive, must have had at least ten years of continuous service at the time of the sale of the facility at which he worked. Also, each member of the proposed class working at a facility sold during the period from July 1, 1972 through March 26, 1973 (the date of the filing of the Plaintiffs' First Amended Complaint),[1] inclusive, must have had ten years of service (not necessarily continuous service) at the time of the sale of the facility at which he worked.

Since the benefit plan upon which the proposed class claim is based was amended effective July 1, 1972, the proposed plaintiff class consists of two subclasses that will be identified as the "Before-Amendment" and the "After-Amendment" subclasses. Each of these subclasses consists in part of two subclasses that will be identified as the "Rule of 75" subclass or the "Rule of 80" subclass, depending under which (or both) rule(s) the proposed class member qualifies for the early retirement benefits.

For the following reasons, in Count I a plaintiff class composed of all members of any of these four subclasses will be certified pursuant to F.R.Civ.P. 23(b)(3). The description of the plaintiff class and subclasses is as follows:

The plaintiff class consists of all members of any of the following subclasses: the "Before-Amendment Rule of 75" subclass, the "Before-Amendment Rule of 80" subclass, the "After-Amendment Rule of 75" subclass, or the "After-Amendment Rule of 80" subclass.

A) The "Before-Amendment Rule of 75" subclass (hereinafter "B.A.–75") consists of all salaried employees working at facilities at which the ASI Plan was in effect at the time of the sale of the facility at which they worked during the period July 1, 1969 through June 30, 1972, inclusive, who, at the time of the sale of that facility, had ten years of continuous service, were fifty-five or older, and had combined years of age and years of continuous service of at least seventy-five.

B) The "Before-Amendment Rule of 80" subclass (hereinafter "B.A.–80") consists of all salaried employees working at facilities at which the ASI Plan was in effect at the time of the sale of the facility at which they worked during the period July 1, 1969 through June 30, 1972, inclusive, who, at the time of the sale of that facility, had combined years of age and years of continuous service of at least eighty.

C) The "After-Amendment Rule of 75" subclass (hereinafter "A.A.–75") consists of all salaried employees working at facilities at which the ASI Plan was in effect at the time of the sale of the facility at which they worked during the period July 1, 1972 through March 26, 1973, inclusive, who, at the time of the sale of that facility, had ten years of service, were fifty-five or older, and had combined years of age and service of at least seventy-five.

D) The "After-Amendment Rule of 80" subclass (hereinafter "A.A.–80") subclass consists of all salaried employees working at facilities at which the ASI Plan was in effect at the time of the sale of the facility at which they worked during the period July 1, 1972 through March 26, 1973, inclusive, who, at the time of the sale of that facility, had ten years of service, and had combined years of age and service of at least eighty.

## I. FINDINGS OF FACT

Wilcox Electric Company (Wilcox) of Kansas City, Missouri was acquired by ASI on June 7, 1968. Plaintiffs Esler and Stone were longtime salaried employees of Wilcox.

---

1. Although a Second Amended Complaint was filed October 25, 1974, and a Supplemental Second Amended Complaint was filed February 18, 1975, the "relevant period" in controversy remains the period from July 1, 1969 through March 26, 1973, when the First Amended Complaint was filed (Outline at 2; Joint Statement, P & ASI, ¶¶ 13–15).

From July 1, 1969 through March 26, 1973, retirement plan coverage for certain salaried employees at certain facilities located within the United States was provided pursuant to the ASI Plan. The official text of the ASI Plan is set forth in the "Retirement Plan of American Standard Inc. and Participating Subsidiary Companies." Although ASI did not own or operate all such facilities, ASI designated certain owners of such facilities as "Participating Subsidiary Companies" pursuant to the ASI Plan (Joint Statement of Plaintiffs and American Standard of Stipulated and Controverted Facts, filed May 13, 1976 [hereinafter Joint Statement, P & ASI], ¶ 13). Salaried employees at Wilcox were included in the ASI Plan after July 1, 1969 (Joint Statement, P & ASI, ¶ 18). Esler and Stone became participants and potential beneficiaries of the ASI Plan effective July 1, 1969 (Joint Statement, P & ASI, ¶¶ 20–21).

Section 3.5 of the official text of the ASI Plan, as amended July 1, 1969, provided generally for retirement benefits "due to permanent shutdown, mutual agreement, layoff or disability" to

(a) An employee who has had at least ten (10) years of continuous service and:

(i) who has reached his fifty-fifth birthday and whose combined age and years of continuous service equal at least seventy-five, or

(ii) whose combined age and years of continuous service equal at least eighty at the time service is broken by termination of employment due to permanent shutdown,

or pursuant to mutual agreement or by absence of work due to layoff or disability . . . (Joint Statement, P & ASI, ¶ 32).

Section 3.5 of the ASI Plan was amended, effective July 1, 1972, to provide benefits for "retirement due to permanent shutdown, mutual agreement, layoff or disability" to:

(a) An employee who has had at least ten (10) years of service and:

(i) who has reached his fifty-fifth birthday and whose combined age and years of service equal at least seventy-five, or

(ii) whose combined age and years of service equal at least eighty,

at the time his service is broken by termination of employment due to a permanent shutdown or pursuant to mutual agreement or by absence from work due to layoff or disability (Joint Statement, P & ASI, ¶¶ 33–34).

ASI sold Wilcox as an ongoing business to Northrop on June 4, 1971, at which time plaintiffs Esler and Stone were employed at the Wilcox facility (Joint Statement, P & ASI, ¶¶ 49–49(b)). On the date of the Wilcox sale, the sum of Esler's age (57) and years of service (31.9) exceeded eighty, and the sum of Stone's age (50) and years of service (30) equaled eighty (Joint Statement, P & ASI, ¶¶ 69–70; Joint Appendix, P & ASI, A562–63 & A567–77).

On the date of the Wilcox sale, Esler's age exceeded fifty-five, and the sum of Esler's age (57) and years of service (31.9) exceeded seventy-five (Joint Appendix, P & ASI, at A562–63).

After the sale of Wilcox, American Standard denied the requests of Esler and Stone for Rule of [75 or] 80 layoff and permanent shutdown benefits (Supplement to Joint Statement of Plaintiffs and American Standard of Stipulated and Controverted Facts, filed September 28, 1978 [hereinafter Supp. to Joint Statement, P & ASI], ¶ 1). Neither Esler nor Stone received any Rule of 75 or 80 benefits pursuant to Section 3.5 of the ASI Plan as a result of the Wilcox sale (Joint Statement, P & ASI, ¶ 49(c)).

Between July 1, 1969 and March 26, 1973, eighty-six facilities at which the ASI Plan was in effect were sold or closed (Joint Statement, P & ASI, ¶¶ 14–15). At seventeen of these facilities certain salaried employees on the date of sale had total years of age and service of eighty, or seventy-five, if the employee was fifty-five years of age (Joint Statement, P & ASI, ¶ 16). None of these salaried employees at the seventeen plants covered by the ASI Plan who had the requisite sum of years of age

and years of service on the sale date of the plant at which they worked has received any Rule of 75 or 80 benefits (Joint Statement, P & ASI, ¶¶ 16, 48(b)–(d), 325, 327, 679).

Plaintiffs seek certification pursuant to F.R.Civ.P. 23 of a proposed class, the members of which have not received Rule of 75 or 80 benefits resulting from the sale of the facility at which they worked, despite having the required sum of years of age and years of service.

## II. JURISDICTIONAL BASIS OF COUNT I

In Count I of this action, plaintiffs allege and defendants dispute two distinct grounds for jurisdiction in this Court: A) diversity of citizenship, and B) federal question jurisdiction under the Employee Retirement Security Act of 1974. Each of these grounds will be discussed separately.

### A. *28 U.S.C. § 1332: Diversity Jurisdiction*

■ Plaintiffs claim that the district court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). That section confers jurisdiction in the district court for civil cases when two requirements are met. First, diversity of citizenship of parties as defined by 28 U.S.C. § 1332(a)(1)–(4) must exist. Second, the amount in controversy must be greater than $10,000 exclusive of interest and costs. The diversity of citizenship, *Janzen v. Goos* (C.A. 8 1962) 302 F.2d 421, l.c. 424, 1 *Moore's Federal Practice* ¶ 0.74[1], at 707.1 (2d ed. 1979), and the amount in controversy, *Lynch v. Porter* (C.A. 8 1971) 446 F.2d 225, l.c. 228, 1 *Moore's Federal Practice* ¶ 0.91[3], at 850 (2d ed. 1979), must appear at the time the suit is instituted.

### 1. Diversity of Parties

Plaintiff Esler is a citizen of Kansas and plaintiff Stone is a citizen of Missouri (Joint Statement, P & ASI, ¶¶ 1, 2; Joint Stipulation of Plaintiffs and Defendants Northrop Corporation and Retirement Plan for Salaried Employees of Northrop Corporation Concerning Certification of This Action As A Class Action, filed April 27, 1976 [hereinafter Joint Stipulation, P & Northrop] ¶¶ 1, 2). Defendant ASI is a Delaware corporation with its principal place of business in New York (Joint Statement, P & ASI, ¶ 3). Defendant ASI Plan is an employee benefit plan administering benefits from its principal place of business in New York (Joint Statement, P & ASI, ¶ 4). Defendant Northrop is incorporated in California and has its principal place of business in that state (Joint Stipulation, P & Northrop, ¶ 3). Defendant Northrop Plan is an employee benefit plan with its principal place of business in California (Joint Stipulation, P & Northrop, ¶ 4).

For the purpose of determining citizenship for diversity jurisdiction, 28 U.S.C. § 1332(c) provides that "a corporation shall be deemed a citizen of any State by which it has been incorporated and the State where it has its principal place of business." Applying this section to the defendant corporations, it is clear that the named plaintiffs Esler and Stone and the defendant corporations are citizens of different states. 28 U.S.C. § 1332(a)(1). And assuming, without so holding, that the benefit plans of the *defendant corporations* are entities capable of being sued,[2] it is clear that the named plaintiffs and the defendant benefit plans are citizens of different states. 28 U.S.C. § 1332(a)(1). So it is not necessary to explore the legal status of the defendant benefit plans. Therefore, the jurisdictional requirement of complete diversity of the named parties is satisfied. 13 C. Wright, A.

---

**2.** Defendants ASI Plan and Northrop Plan have asserted that employee benefit plans are not separate legal entities, and hence are not capable of being sued (Separate Answer of Defendant Retirement Plan For Salaried Employees of Northrop Corporation, filed February 27, 1975, ¶ 14 at 3; Answer of Defendant Retirement Plan of American Standard Inc. To Supplemen-

tal Second Amended Complaint, filed March 3, 1975, ¶ 27 at 5; Suggestions In Support of Motion To Dismiss Certain Portions Of Plaintiffs' Second Amended Complaint, filed November 27, 1974, at 9). If the benefit plans are not separate legal entities, their citizenship is that of the defendant corporations of which the plans are components.

Miller & E. Cooper, *Federal Practice and Procedure* § 3605, at 616 (1975 & Supp.1979, at 339).

■ The jurisdictional requirements for conventional civil suits in the federal system also apply to class actions. *See, Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); *Zahn v. International Paper Company*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) (*Zahn*). It is not necessary, however, to examine the citizenship of the absent class members in this action. Only the citizenship of the named parties is relevant to the determination of jurisdiction. If "one member of a class is of diverse citizenship from the class' opponents, and no nondiverse members are named parties, the suit may be brought in federal court, even though all other members of the class are citizens of the same State as the defendant and have nothing to fear from trying the lawsuit in the courts of their own State." *Snyder v. Harris, supra*, 394 U.S. at 340, 89 S.Ct. at 1059, 22 L.Ed.2d at 326 (1969). 3B *Moore's Federal Practice* ¶ 23.95, at 23–579 n.7 (2d ed. 1979); 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3606, at 634 (1975 & Supp.1979, at 342). It is therefore concluded that the jurisdictional requirement of complete diversity has been satisfied in this class suit.

### 2. Amount In Controversy

The amount in controversy requirement for diversity jurisdiction has been more difficult to satisfy in federal class actions. After a period of uncertainty following the 1966 amendment of F.R.Civ.P. 23, the United States Supreme Court in *Zahn v. International Paper Company, supra*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), established that "each plaintiff [and each class member] in a Rule 23(b)(3) class action must satisfy the jurisdictional amount and any plaintiff who does not must be dismissed from the case . . ." 441 U.S. at 301, 94 S.Ct. at 512, 38 L.Ed.2d at 519. 3B *Moore's Federal Practice* ¶ 23.95, at 23–590 (2d ed. 1979), and 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1756, at 561 (1972 & Supp.1979, at 91).

"Plaintiffs suggest that the *Zahn* decision is expressly limited to class certification pursuant to Rule 23(b)(3), and therefore does not apply to Rule 23(b)(1)(A) or 23(b)(1)(B)" (Plaintiff's Legal Contentions and Authorities Concerning Certification of This Action As A Class Action, filed November 26, 1974 [hereinafter Pl. Legal Contentions] at 5). It is not necessary to determine the limits of *Zahn* at this time, since, as discussed *infra*, the plaintiff class will be certified pursuant to F.R.Civ.P. 23(b)(3). Therefore, the amount in controversy requirement of *Zahn*, that every separate and distinct claim of each class member exceed $10,000, will be applied.

■ The plaintiff has the burden of showing that the required amount is in controversy. This Court has previously noted in *Lumberman's Underwriting Alliance v. Hills* (W.D.Mo.1976) 413 F.Supp. 1193, l. c. 1196 that:

The longstanding general federal rule is that the amount in controversy is to. be determined from the complaint, unless it appears or is in some way shown that the amount stated in the complaint is not claimed "in good faith". In deciding the question of good faith, it . . . must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. *Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890, 894 (1961); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845, 848 (1938); *Buffington v. Amchem Products, Inc.*, 489 F.2d 1053 (8th Cir. 1974); *Crenshaw v. Great Central Ins. Co.*, 482 F.2d 1255 (8th Cir. 1973).

The allegations of the complaint, however, are not dispositive. *Zunamon v. Brown* (C.A.8 1969) 418 F.2d 883, l.c. 885. When the plaintiff's allegation of the amount in controversy is challenged, as here, existence of the required amount must be supported by competent proof. *Hulsenbusch v. Davidson Rubber Co.* (C.A.8 1965) 344 F.2d 730, l. c. 733.

In this action plaintiffs claim non-payment of pension benefits which plaintiffs allege they should have received pursuant to the Rule of 75 or 80. The plaintiffs have calculated the amount in controversy by multiplying the minimum monthly payment allegedly due each class member by the life expectancy of that class member (Joint Statement, P & ASI, ¶ 758). Through these calculations, each class member is alleged to have a distinct and separate claim exceeding $10,000 at the time the initial complaint was filed. The defendants have attacked the sufficiency of the jurisdictional amount on several grounds.

First, defendants allege that only the monthly payments already due may be considered in determining the jurisdictional amount. However, the controversy includes not only the claimed right to installments due at the time the action was filed, but also the claimed right to all installments becoming due in the future. In this regard, the rule is correctly stated in 1 *Moore's Federal Practice* ¶ 0.93[5.–1], at 898 (2d ed. 1979), as follows:

> If the suit is merely for the recovery of installments presently due, with the contract itself continuing in effect, then only the sum of the installments presently due may be counted in determining the jurisdictional amount, for the collateral effect of the present judgment on future installments may not be considered. Where, however, the suit involves a total breach of contract, affecting both present and future liability, it is proper to consider the whole value of the contract. [Citations omitted.]

In 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3710, at 494 (1976), the same rule is stated in a different manner.

That the death of the pension beneficiary or some other condition subsequent could terminate the liability of the defendants to pay future installments does not operate to reduce the amount in controversy determined on the basis of full payment of installments. *Liberty Mutual Insurance Company v. Horton*, 367 U.S. 348, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961).

In support of their contention that only benefits already accrued are properly considered to be in controversy, defendants cite *Keck v. Fidelity and Casualty Co. of New York* (C.A.7 1966) 359 F.2d 840, and *Merrick v. Allstate Insurance Co.* (C.A.8 1965) 349 F.2d 279 (American Standards' Statement of Legal Contentions, filed March 3, 1975 [hereinafter ASI Legal Contentions] at 49; Response of American Standard to Outline of Plaintiff's Position Concerning Certification, filed July 9, 1978 [hereinafter ASI Response to Outline] at 8, 10). Both of those cases involved the refusal to allow future benefits payable under a disability insurance policy to be considered in determining the jurisdictional amount. Neither case is applicable to this action. The United States Court of Appeals for the Seventh Circuit explained the rationale for the rule disallowing future disability payments in determination of the jurisdictional amount in *Keck v. Fidelity and Casualty Co. of New York, supra*, 359 F.2d at 842, cited by defendants as follows:

> The company is obligated to make [total disability] payments only so long as the condition evidencing total and permanent disability continues; and as this condition, theoretically at least, may change at any time, it is impossible to say that any controversy exists as to any disability payments except such as have accrued . . . [quoting *Mutual Life Ins. Co. of New York v. Moyle*, 116 F.2d 434, 435 (4th Cir. 1940)].

Clearly, there is a significant difference between a disability insurance policy, which contains an express condition of periodic proof of continuing disability, and the pension benefits at issue in this action, which have no such condition. *See,* 1 *Moore's Federal Practice* ¶ 0.93 [5.2–2], at 900 (2d ed. 1979). It is therefore concluded that this contention of the defendants is without merit.

Second, defendants dispute the use of mortality tables in the calculation of the amount in controversy. However, the use of such tables in the setting of damages has

been widely approved. *See, Minnesota Amusement Co. v. Larkin* (C.A.8 1962) 299 F.2d 142.

The use of annuity tables to determine the present value of the total claimed monthly pension benefits, as suggested by defendants (Response to Plaintiffs' Reply to ASI Legal Contentions, filed May 6, 1975 [hereinafter ASI Response to Pl. Reply], at 5), might be preferable to the method chosen by plaintiffs. However, even assuming, without so deciding, that the total amount in controversy must be discounted to its present value, the defendants have not shown that the method of calculation they propose would change the determination that each of the proposed class members' claims exceeds $10,000. Therefore, the Court has been presented with no reason to disapprove of the use of mortality tables in this preliminary tentative determination.

Finally, plaintiff's burden is only to show that it is not a legal certainty that the suit is really for less than the jurisdictional amount. 1 *Moore's Federal Practice* ¶ 0.92[1], at 855 (2d ed. 1979). Plaintiff is not required to painstakingly prove the damages of each class member at this time. Considering the evidence as measured against this standard, it is concluded that this Court has diversity jurisdiction, pursuant to 28 U.S.C. § 1332, of the claims of the named plaintiffs and of the members of the proposed class in Count I.

### B. *29 U.S.C. § 1132: ERISA Jurisdiction*

Plaintiffs also claim in Count I that this Court has jurisdiction pursuant to Sections 502(a)(1)(B), 502(e)(1) and 502(f) of the Employee Retirement Income Security Act of 1974 [ERISA], 29 U.S.C. §§ 1132(a)(1)(B), (e)(1) and (f). Since diversity jurisdiction has already been found to exist, this Court would ordinarily decline to address the issue of ERISA jurisdiction. However, as both plaintiffs and defendants have requested reasonable attorney's fees as provided for in 29 U.S.C. § 1132(g) [§ 502(g) of ERISA], the question of ERISA jurisdiction will be decided at this time.

In 29 U.S.C. § 1132, Congress provided for a private right of action to enforce pension rights in a manner analogous to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, as construed in *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) (H.R.Conf.Rep.No.1280, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 4639, 5038, l.c. 5107). This section authorizes the federal courts to fashion a consistent body of federal law concerning employee benefits.

29 U.S.C. § 1132 provides in relevant part:

(a) A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

\* \* \* \* \* \*

(e) (1) Except for actions under subsection

(a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

\* \* \* \* \* \*

(f) The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.

29 U.S.C. § 1144 provides in relevant part:

(a) Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or

hereafter relate to any employee benefit plan described in section 4(a) and not exempt under section 4(b). This section shall take effect on January 1, 1975. (b)(1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.

Plaintiffs contend that 29 U.S.C. § 1132 became effective on the date of its enactment, September 2, 1974, and therefore it provides for jurisdiction over the pre-ERISA claims of their Second Amended Complaint, filed on October 25, 1974. Defendants contend that the effective date of 29 U.S.C. § 1132 is January 1, 1975, and that no part of ERISA applies to acts prior to January 1, 1975. Plaintiffs and ASI do agree that none of the substantive provisions of ERISA apply to occurrences before January 1, 1975. (Pl. Legal Contentions at 1–4; Plaintiff's Reply Pre-Trial Brief Concerning Certification of This Action As A Class Action, filed March 26, 1975 [hereinafter Pl. Reply Legal Contentions], at 90; ASI Response to Pl. Reply at 7–10). However, plaintiffs contend that 29 U.S.C. § 1132 creates a post-ERISA federal forum for actions under state law concerning pre-ERISA occurrences. (Plaintiff's Suggestions In Opposition To Motion To Quash And Dismiss Second Amended Complaint, filed January 15, 1975, at 2).

It is not necessary to decide the effective date of this legislation in this action. The narrow question for decision is whether this Court has jurisdiction over a private civil enforcement action pursuant to 29 U.S.C. § 1132(a)(1)(B) which concerns acts and occurrences that took place prior to September 2, 1974.

*Leonardis v. Local 282 Pension Trust Fund* (E.D.N.Y.1975) 391 F.Supp. 554, cited by plaintiffs, is not in point. Retroactive effect of ERISA was not at issue in that case, as the claims arose after September 2, 1974 (although before January 1, 1975). Neither is *Malone v. White Motor Corporation*, 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978), cited by defendants, helpful. That case involved only the question of the pre-ERISA preemption by federal labor policy of state regulation of pensions.

The point at issue has been squarely faced and uniformly resolved in several recent cases. In *Martin v. Bankers Trust Co.* (C.A.4 1977) 565 F.2d 1276, aff'g (W.D. Va.1976) 417 F.Supp. 923, an action filed in November 1975 sought enforcement of pension benefits alleged due an employee who was terminated before June 1, 1974. Jurisdiction was predicated on 29 U.S.C. § 1132(a)(1)(B). The United States Court of Appeals for the Fourth Circuit rejected the plaintiff's jurisdictional claim, noting:

It is clear from the statutory language that the supersedure provision and its exception for causes of action which accrued prior to January 1, 1975, precludes federal jurisdiction of Martin's claim which, concededly, is based upon events which occurred even before ERISA had been signed into law. 565 F.2d at 1278.

The Court of Appeals also rejected plaintiff's contention that the failure of the employer to pay the benefits allegedly due was a continuing breach extending past January 1, 1975, and therefore actionable under ERISA. The district court's dismissal for lack of subject matter jurisdiction was affirmed.

In *Cowan v. Keystone Employee Profit Sharing Fund* (C.A.1 1978) 586 F.2d 888, aff'g (D.Mass.) 449 F.Supp. 235, the event complained of occurred in November 1974. The United States Court of Appeals for the First Circuit affirmed the district court's dismissal for lack of subject matter jurisdiction, deciding that in "our view, § 1132 confers jurisdiction over claims of the type asserted by Cowan only if they arose after January 1, 1975 . . ." 586 F.2d at 892. In analyzing 29 U.S.C. § 1144, the preemption section of ERISA, the Court noted that the

most natural reading of this provision is that state substantive law continues to apply to causes of action that arose prior to 1975. Several courts in fact have assumed or suggested that § 1144 therefore precludes federal jurisdiction over pre-1975 causes of action. *Martin*, 565 F.2d at 1278; *Finn v. Chicago Newspaper Pub-*

*lishers' Association—Drivers Union Pension Plan*, 432 F.Supp. 1178, 1179 (N.D.Ill. 1977); *Anderson v. Abex Corp.*, 418 F.Supp. 5, 6 n.1 (D.Vt.1975), aff'd mem., 539 F.2d 703 (2d Cir. 1976). 586 F.2d at 893.

\* \* \* \* \* \*

We think that § 1144 instead precludes federal jurisdiction over any cause of action arising from an "independent, actionable event," *Finn*, 432 F.Supp. at 1179, that occurred prior to January 1, 1975, . . . . 586 F.2d at 894.

\* \* \* \* \* \*

We conclude that all such claims as Cowan has arose in 1974 and hence under state, not federal law. His action therefore was properly dismissed on jurisdictional grounds, since it presented immaterial or insubstantial federal claims. 586 F.2d at 895.

*Cf., Winer v. Edison Brothers Stores Pension Plan* (C.A.8 1979) 593 F.2d 307, l.c. 313; *Morrissey v. Curran* (C.A.2 1977) 567 F.2d 546, l.c. 548 n.5; *Reuther v. Trustees of Trucking Employees Welfare Fund* (C.A.3 1978) 575 F.2d 1074, l.c. 1078; *Trippett v. Smith* (C.A.10 1979) 592 F.2d 1112, l.c. 1113–14; *Fremont v. McGraw-Edison Company* (N.D.Ill.1978) 460 F.Supp. 599, l.c. 601; *Marshall v. Craft* (N.D.Ga.1978) 463 F.Supp. 493, l. c. 496. *See also* Phillips, *Civil Litigation Under the Employee Retirement Income Security Act of 1974*, 49 Miss.L.J. 241, l.c. 250 (1978) ("Jurisdiction under ERISA applies to causes of action arising after January 1, 1975, the effective date of the Act. For causes of action which arose prior to the effective date, pre-ERISA jurisdictional holdings remain in force."); Lee, *"Elaborate Interweaving of Jurisdiction": Labor and Tax Administration and Enforcement of ERISA and Beyond*, 10 U.Rich.L.Rev. 463, l.c. 486–87 (1976); *Note,* Private Enforcement of Employees Retirement Income Security Act, 47 U.Cinn.L. Rev. 272, l.c. 276 (1978).

■ It is therefore concluded that 29 U.S.C. § 1132 does not provide a federal forum for pre-ERISA causes of action, even those brought under state substantive law.

■ Since the parties have agreed that the "relevant period" extends from July 1, 1969 through March 26, 1973 (Joint Statement-ASI, ¶¶ 13–14), no jurisdiction under 29 U.S.C. § 1132 exists. Therefore, it is concluded that this Court does not have federal question jurisdiction in this action.

## III. APPLICATION OF RULE 23 TO COUNT I

### A. *Preliminary Considerations*

■ Rule 23, F.R.Civ.P., governs federal class action litigation. To be certified as a class action, a case must satisfy the four explicit requirements of F.R.Civ.P. 23(a), and, in addition, one of the subsections of F.R.Civ.P. 23(b). *Sperry Rand Corp. v. Larson* (C.A.8 1977) 554 F.2d 868, l.c. 874–875. Each of these requirements will be examined separately in the following text.

■ The introductory language of F.R. Civ.P. 23(a), however, implicitly requires two preliminary determinations which must first be discussed. A. Miller, *An Overview of Federal Class Actions: Past, Present, and Future* (Federal Judicial Center FJC–ETS–77–8) (1977) [hereinafter A. Miller, *Overview*], at 15. One of these is that a class which is capable of accurate description must actually exist. *See* 1. H. Newberg, *Class Actions* § 1032a, at 72 (1977), *Vietnam Veterans Against the War v. Benecke* (W.D.Mo.1974) 63 F.R.D. 675, l. c. 680. There must be some claimed right or rights which set apart the members of the proposed class. The proposed class may be fluid, but there must be an efficient method of identifying its members with reasonable effort. 3B *Moore's Federal Practice* ¶ 23.-04[1], at 23–114 (2d ed. 1979); 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1760, at 581 (1972 & Supp.1979, at 105); A. Miller, *Overview* at 17.

In this action plaintiffs suggest these elements which define a class:

1. Each employee was covered by American Standard's pension plan for salaried employees.

2. Each class member worked at a sold facility.

3. On the date of sale, the American Standard pension plan was in effect.

4. On the date of sale, each class member had the requisite total years of age and service to qualify for the Rule of 80. (Pl. Reply Legal Contentions, at 94; Transcript of Hearing on Motion for Class Action Certification on June 15, 1978, filed June 28, 1978 [hereinafter Tr.] at 19–20).

No member of the proposed class defined above received Rule of 75 or 80 benefits as a result of a sale of the facility at which he worked. Plaintiffs seek certification of this proposed "Rule of 80" class.

Since the class definition rests upon definite standards (participant of ASI Plan; employed as of sale date; sum of years of age and service equaled at least 80, or 75 if age over 55), the class exists and is capable of being described without difficult managerial and administrative problems. It is therefore concluded that in Count I the first preliminary condition, existence of a class, has been proven.

The second of these preliminary considerations is that a representative must be a member of the proposed class. 1 H. Newberg, *Class Actions* § 1080, at 138 (1977); A. Miller, *Overview* at 18. This prerequisite is based upon the real party in interest rule of procedure, F.R.Civ.P. 17(a); the wording of F.R.Civ.P. 23(a) that "[o]ne or more *members of a class* may sue or be sued as representative parties . . . ." [emphasis added]; and the constitutional requirement of standing. *See* 3B *Moore's Federal Practice* ¶ 23.04[2], at 23–120 (2d ed. 1979); 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1761, at 584–85 (1972 & Supp.1979, at 110). However, the consideration that the representative be a member of the class is not regarded by all to be an additional, technical threshold requirement. One commentator suggests that the requirement is only an acknowledgement that an inquiry by the Court into the underlying legal concepts is necessary and that "most cases utilizing the rubric of membership in the class properly interpret this requirement as a matter of meeting threshold individual standing requirements." 1 H. Newberg, *Class Actions* § 1080a, at 142 (1977).

In determining whether the putative representatives are class members, the court must consider the nature and sometimes the elements of the controversy. A. Miller, *Overview* at 19. The proposed plaintiff class is well-defined, and its members are readily identifiable.

Plaintiff Esler's years of age and service at the time of the Wilcox sale would qualify him for benefits under either the Rule of 75 or the Rule of 80. Plaintiff Stone's years of age and service at the time of the Wilcox sale would qualify him for benefits under the Rule of 80. It is clear that plaintiffs Esler and Stone are within the proposed plaintiff class, and thus are eligible to serve as class representatives. Also, because of the predominant common issues, the interests of all four subclasses is substantially the same as the interests of the subclasses of which Esler and Stone are members.

It is determined that plaintiffs Esler and Stone are qualified to represent the proposed plaintiff class. It is therefore concluded that the second preliminary requirement, that the representative parties be members of the class, has been met.

### B. *The Prerequisites of Rule 23(a)*

F.R.Civ.P. 23(a) sets forth four requirements for federal class actions. These four requirements, and the application of each to Count I, are stated and examined separately in the following text.

### 1. The Requirement of F.R.Civ.P. 23(a)(1) That Joinder Be Impracticable

F.R.Civ.P. 23(a)(1) provides that an action may be brought as a class action "only if (1) the class is so numerous that joinder of all members is impracticable." First, F.R.Civ.P. 23(a)(1) only requires that joinder be impracticable. It does not require that joinder be impossible. *Jenson v. Continental Financial Corp.* (D.Minn.1975) 404 F.Supp. 806, l.c. 809; 3B *Moore's Feder-*

al Practice ¶ 23.05[3], at 23–168 (2d ed. 1979); 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1762, at 593 (1972 & Supp.1979, at 120); A. Miller, *Overview* at 22. A showing of strong litigational inconvenience in the prosecution of claims separately or jointly by the proposed class members is sufficient. 1 H. Newberg, *Class Actions* § 1105a, at 172 (1977 & Supp.1978, at 18).

Second, the rule contains no explicit numerical limitations. It has been suggested, however, that generally classes of forty or more persons have been certified, while those of less than twenty-five have not been certified. A. Miller, *Overview* at 22. "The difficulty inherent in joining as few as 25 or 30 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of 23(a)(1) on that fact alone." 1 H. Newberg, *Class Actions* § 1105b, at 174 (1977 & Supp.1978, at 19); *see* 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1762, at 596–99 (1972 & Supp.1979, at 124–30); 3B *Moore's Federal Practice* ¶ 23.05[1], at 23–151 to 23–155 (2d ed. 1979) ("While there are exceptions, numbers under twenty-one have generally been held to be too few. Numbers between twenty-one and forty have evoked mixed responses and again, while there are exceptions, numbers in excess of forty, particularly those exceeding one hundred or one thousand have sustained the requirements." [Footnotes omitted.]).

█ Third, additional facts may be considered by the Court in determining whether joinder is impracticable. *Boyd v. Ozark Air Lines, Inc.* (C.A.8 1977) 568 F.2d 50, l.c. 54–55. The geographic dispersion of the class members, *Boyd v. Ozark Air Lines, Inc., supra*, 568 F.2d at 55, and the size of the claims of the individual class members may indicate the impracticability of joinder in those cases where the magnitude of the number of class members alone is not conclusive on that issue. A. Miller, *Overview* at 23. The more widely the parties are dispersed, the more impracticable is their joinder in one action, or the prosecution of

separate actions. 1 H. Newberg, *Class Actions* § 1105e, at 176 (1977 & Supp.1978, at 20); A. Miller, *Overview* at 23. And when the individual claims are for small amounts of damages, the joinder of all claims may be less likely. A. Miller, *Overview* at 23.

█ The proposed plaintiff class consists of 186 individual claimants (Joint Statement, P & ASI, ¶ 17). This fact alone satisfies the requirement of F.R.Civ.P. 23(a)(1) that joinder be impracticable. Further, the proposed plaintiff class contains members from at least the ten states in which the facilities which were sold were located. Even wider geographic dispersion is shown by the addresses of the members of the proposed class as set forth in the narrative statements (*See* Joint Statement, P & ASI, ¶ 758; and Tr. at 49). Finally, while the claims of the individual class members in this action cannot be characterized as small, neither are they of great magnitude.

Considering the number of members of the proposed plaintiff class and their geographic dispersal, it is concluded that the requirement of F.R.Civ.P. 23(a)(1) that joinder be impracticable has been met.

2. The Requirement of F.R.Civ.P. 23(a)(2) That There Be Common Questions of Law Or Fact

█ F.R.Civ.P. 23(a)(2) requires that there be "questions of law or fact common to the class." This prerequisite for class treatment requires only a preliminary inquiry. There is no quantitative or qualitative requirement to F.R.Civ.P. 23(a)(2). 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1763, at 603 (1972). The "rule does not require that all questions of fact and law be common." 3B *Moore's Federal Practice* ¶ 23.06–1, at 23–173 (2d ed. 1979). F.R.Civ.P. 23(a)(2) requires only that there be one or more significant common question of law or fact. A. Miller, *Overview* at 24–25.

Also, this preliminary requirement should be distinguished from the requirement of F.R.Civ.P. 23(b)(3) that common issues predominate. "It is settled that individual is-

sues will invariably be present in a class suit, and the common issues need not be dispositive of the litigation." 1 H. Newberg, *Class Actions* § 1110f, at 184 (1977).

■ All members of the proposed plaintiff class in Count I participated in the same plan; all satisfied the objective requirements of the Rule 75 or 80; and yet none of them received any early retirement benefits after the sale of the facility at which they worked. The question of whether a sale was a permanent shutdown or layoff, without more, would be sufficient to satisfy this subsection. Therefore, it is concluded that the issues presented in Count I involve common questions sufficient to satisfy F.R.Civ.P. 23(a)(2).

3. The Requirement of F.R.Civ.P. 23(a)(3) That The Representatives' Claim Be Typical

■ F.R.Civ.P. 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The rule does not require identity or substantial identity, although courts sometimes use the term "coextensiveness". A. Miller, *Overview* at 26. "Plaintiff has satisfied Rule 23(a)(3) if the claims and defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1764 (Supp.1979 at 142) (citing *Donaldson v. Pillsbury Co.* (C.A.8) 554 F.2d 825, l.c. 830, *cert. denied*, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977). The plain meaning of the rule defines the material inquiry, which is: Do the parties seeking to represent the class have claims or defenses which are not shared by the proposed class members?

■ The narrative statements and briefs concerning Count I demonstrate that the named plaintiffs in this action bring no claims and assert no defenses which are not coextensive to those of the members of the proposed Rule of 75 or 80 class. Defendants argue that plaintiffs would not have initiated this action if the plaintiffs had not

been terminated. This has nothing to do with the requirement that the claims of the representative parties be typical. It is relevant only to inquire whether the interests of the named plaintiffs in this action, who have been terminated as employees, "are squarely aligned in interest with the class members," some of whom have continued employment. 1 H. Newberg, *Class Actions* § 1115f, at 191 (1977), *quoting* B. Kaplan, Continuing Work of the Civil Committee: 1966 Amendment of the Federal Rules of Civil Procedure (I), 81 Harv.L.Rev. 356, 387 n. 120 (1967). Count I involves only the events which surrounded the period of the sale of each facility. The predominant issue in Count I is whether the sale of a facility at which the ASI Plan was in effect was an event triggering the Rule of 75 or 80 early retirement benefits. Since all members of the proposed plaintiff class were working at the facility the claims of the representative parties are typical of the claims of the class.

Defendants also claim that the plaintiff Esler's eligibility for a disability pension demonstrates that his claim is not typical. Disability plan eligibility is not relevant to the early retirement benefits at issue here. The disability pension and the early retirement benefits are separate and distinct benefits within the same benefit plan. Also, the amount of the retirement benefit under the disability provisions of Section 3.5(a) of the official text of the ASI Plan is calculated differently than the amount of benefits for layoff or shutdown under that same section (Supp. to Joint Statement, P & ASI, ¶ 4).

Therefore, it is concluded that the putative representatives' claims are typical of those of the proposed plaintiff class and that the requirements of F.R.Civ.P. 23(a)(3) have been met.

4. The Requirement of F.R.Civ.P. 23(a)(4) That There Be Adequate Representation of The Class

■ F.R.Civ.P. 23(a)(4) requires for class adjudication a determination that "the

representative parties will fairly and adequately protect the interests of the class." "This prerequisite is particularly important, because the final judgment in a class action is binding on all those whom the court determines are members of the class." 1 H. Newberg, *Class Actions* § 1120, at 195 (1977). It is also important because, although expressed in terms of a procedural requirement for class suit, the requirement of adequacy of representation embodies a due process concept. A. Miller, *Overview* at 28. One who will be bound by the outcome of litigation is entitled to have his interests adequately represented in that litigation.

It is the duty of the Court to ascertain the adequacy of representation at certification, and to continue to monitor it throughout the entire course of the litigation. A. Miller, *Overview* at 30. This affirmative duty is based upon a fairness rationale, recognizing that the absent class members did not choose the forum, the counsel for the class or even to litigate, and that the legitimate interests of all class members must be protected. A. Miller, *Overview* at 31. This inquiry by the Court has two elements, focusing on the adequacy of both the representative parties, and the class counsel. 3B *Moore's Federal Practice* ¶ 23.07[1], at 23–202 (2d ed. 1979); A. Miller, *Overview* at 31.

In determining the adequacy of the plaintiffs Esler and Stone to act as class representatives, the Court must inquire whether the proposed representatives: 1) are able to act as fiduciaries in protecting the class interests; 2) hold a substantial stake in the controversy; 3) possess resources adequate for the prosecution of the claim; 4) are motivated for reasons unrelated to the cause itself; and 5) have any interest conflicting with class interest. A. Miller, *Overview* at 32; *see* 3B *Moore's Federal Practice* ¶ 23.07 (2d ed. 1979), and 7 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 1765–1769 (1972 & Supp.1979).

In this action, plaintiffs Esler and Stone have acted, and continue to act, as fiduciaries for the proposed plaintiff class.

They have presented in Count I not only claims involving the sale of the facility at which they were employed, but also claims involving the sale of the sixteen other facilities at which the members of the proposed class were employed. Throughout the course of litigation involving Count I, plaintiffs have fairly represented the proposed plaintiff class.

Plaintiffs also hold a substantial stake in the controversy. The damages sought by plaintiffs are great, exceeding the diversity jurisdictional amount. Plaintiffs have at least as substantial a stake in the controversy as any other class member.

In determining whether the plaintiffs' resources are sufficient, the most relevant indicator is that the plaintiffs have regularly paid the expenses incurred in this extensive and protracted litigation. Also, the plaintiffs intend to continue to pay the out-of-pocket expenses incurred in this litigation (Supp. to Joint Statement, P & ASI, ¶¶ 2–3). The continued prosecution of such a lengthy, complex proceeding also reflects favorably on the motivation of plaintiffs to continue to advance the class interests.

There has been no showing that the plaintiffs brought this suit for reasons unrelated to the dispute concerning the Rule of 75 or 80 benefits.

Finally, the Court has been presented with no evidence that interests of the named plaintiffs are antagonistic to those of the class. Defendants contend that the interests of continuing and terminated employees are antagonistic (ASI Legal Contentions at 36.). However, "not every difference in view creates the antagonism which will defeat the bringing of a class action for the antagonism must relate to the subject matter of the suit. *Jacobi v. Bache & Co.* (S.D.N.Y.1972) 16 F.R.Serv.2d 71, l.c. 73, quoted in 1 H. Newberg, *Class Actions* § 1120f, at 202–03 (1977); *Redmond v. Commerce Trust Co.* (C.A.8 1944) 144 F.2d 140, l. c. 151, *cert. denied*, 323 U.S. 776, 65 S.Ct. 187, 89 L.Ed. 620 (1945) ("[A]ntagonism must be as to the subject matter of the suit."); *accord, Sperry Rand Corp. v. Larson, supra*, 554 F.2d at 874; *see*, 3B *Moore's*

*Federal Practice* ¶ 23.07[3] at 23–237 n. 10 (2d ed. 1979); 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1768, at 639 (1972) ("But only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."). Since the named plaintiffs and proposed class members have an identical interest that the sale was a permanent shutdown, this argument fails. *See, Reynolds v. National Football League* (C.A.8 1978) 584 F.2d 280, l. c. 285–86.

Therefore, after consideration of all of the above factors it is concluded that the named plaintiffs are adequate representatives of the proposed plaintiff class.

█ Whether the proposed class counsel will adequately represent the members of the proposed class must also be determined by the Court. The central inquiry is whether counsel is experienced with the type of class litigation involved in the case, and generally able to conduct the proposed litigation. A. Miller, *Overview* at 35; 3B *Moore's Federal Practice* ¶ 23.07[1], at 23–210 (2d ed. 1979). All of the resources of counsel must be evaluated, including professional experience, motivation, competence, support personnel, and other professional commitments. A. Miller, *Overview* at 35; *see,* 3B *Moore's Federal Practice* ¶ 23.07[1] (2d ed. 1979). In this action, plaintiffs are represented by a firm experienced in litigation which has adequate resources for the representation of the class. Indeed, one only need refer to the hundreds of pages of briefing, narrative fact statements and discovery, as well as the forty page docket sheet, to ascertain that both parties are represented by experienced counsel.

Therefore, after considering all of the factors for adequate representation, it is concluded that plaintiffs satisfy the requirements of F.R.Civ.P. 23(a)(4).

### C. *The Requirements of Rule 23(b)*

If an action meets all of the prerequisites for a class action of F.R.Civ.P. 23(a), it must then also satisfy one of the three sections of F.R.Civ.P. 23(b). *Sperry Rand Corp. v. Lar-son, supra,* 554 F.2d at 874–75. Plaintiffs claim that this action may be brought pursuant to either F.R.Civ.P. 23(b)(1) or F.R.Civ.P. 23(b)(3). The propriety of certifying this action under each of those sections will be discussed separately in the following text.

### 1. F.R.Civ.P. 23(b)(1)

█ F.R.Civ.P. 23(b)(1) authorizes class action treatment if prejudice to a party would result from multiple suits involving the same subject matter. *See,* 1 H. Newberg, *Class Actions* § 1130, at 230 (1977). Plaintiffs contend that this action may be brought either under F.R.Civ.P. 23(b)(1)(A) or 23(b)(1)(B).

### a. F.R.Civ.P. 23(b)(1)(A)

F.R.Civ.P. 23(b)(1)(A) provides for class action treatment in cases in which:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.

This section encompasses a limited number of situations. The focus of the inquiry is whether individual actions would create a risk of incompatible standards for the non-class party. That the non-class defendant would be required to pay money damages to some but not to other plaintiffs is not an inconsistent or varying adjudication as contemplated by F.R.Civ.P. 23(b)(1)(A). *See,* 3B *Moore's Federal Practice* ¶ 23.35[1], at 23–269 to 23–270 (2d ed. 1979); 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1773, at 9 (1972 & Supp.1979, at 3–4); A. Miller, *Overview* at 43.

Plaintiffs contend that the claim for money damages is appropriate under F.R.Civ.P. 23(b)(1)(A) because of:

1) the underlying contractual duty owed all class members; 2) the limited assets of American Standard's pension plan; 3) American Standard's interest in the uni-

form administration of its pension plan; and 4) American Standard's continuing duty to administer its pension plan. (Pl. Reply Legal Contentions at 144.)

The plaintiffs have failed to show that the above contentions would require inconsistent conduct by ASI. The defendant ASI, the non-class party, would not be placed in an actual or virtual dilemma, from conflicting or varying adjudications without the class action device, on the issue whether the Wilcox sale was a permanent shutdown. Such inconsistent or varying adjudications would result in liability for damages to some but not all members of the class. The risk of inconsistent adjudications of liability for damages does not meet the requirement of F.R.Civ.P. 23(b)(1)(A). A. Miller, *Overview* at 43. Therefore, it is concluded that this action may not proceed as a F.R.Civ.P. 23(b)(1)(A) class action.

b. F.R.Civ.P. 23(b)(1)(B)

F.R.Civ.P. 23(b)(1)(B) provides for class treatment where separate actions would create a risk of:

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest.

While F.R.Civ.P. 23(b)(1)(A) focuses on the possible prejudice to the party opposing the class, F.R.Civ.P. 23(b)(1)(B) focuses on the ability of the individual members of the class to protect their interests if other class members brought separate actions. 3B *Moore's Federal Practice* ¶ 23.35[2], at 23–275 (2d ed. 1979). The possible prejudice need exist only as a practical matter, not as a legal matter. A. Miller, *Overview* at 44–45; 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1774, at 14 (1972 & Supp.1979, at 6–7). This section applies most often to cases involving multiple claims to a fund which may be insufficient to satisfy all of the claims. A. Miller, *Overview* at 45; 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1774, at

115 (1972 & Supp.1979, at 7–8); 3B *Moore's Federal Practice* ¶ 23.35[2], at 23–278 (2d ed. 1979). In such a case, without the class action device, the winner of the race to the courthouse may take all.

In Count I, a common fund, the assets of the ASI Plan, arguably does exist, but there is no showing that it is insufficient to pay all the claims of the members of the proposed plaintiff class. There is no showing that payment of the claimed benefits would prejudice others claiming under the common fund.

Therefore, it is concluded that Count I is not appropriate for treatment as a class action pursuant to F.R.Civ.P. 23(b)(1)(B).

2. F.R.Civ.P. 23(b)(3)

F.R.Civ.P. 23(b)(3) provides for class action treatment where:

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The first necessary determination is whether common questions of fact or law predominate. The common questions need not be determinative, but the efficiency and economy of common adjudication must outweigh the difficulties and complexity of individual treatment of class member claims. A. Miller *Overview* at 48–49, *see* 7A C. Wright & A. Miller, *Federal Practice and Procedure* §§ 1777–78 (1972 & Supp. 1979), 3B *Moore's Federal Practice* ¶ 23.45[2] (2d ed. 1979).

Plaintiffs contend that the common issues include:

(1) whether the "official text" or the manual "American Standard and You" is the retirement plan for American Standards' salaried employees;

(2) if the "official text" is the basic retirement plan for American Standard salaried employees, whether it has been modified by representations made to the whole class;

(3) whether the sale of a facility is a "permanent shutdown" of a facility; and

(4) whether the sale of a facility is a "layoff" of that facility's salaried employees. (Pl. Legal Contentions at 36.)

Plaintiffs further contend that the burden of individual determination of each proposed class member's damages is outweighed by the efficiency of class determination of liability. Defendants counter that each proposed class member's claim and each sale of a facility is separate and unique, and thus the action is inappropriate for F.R.Civ.P. 23(b)(3) treatment.

 The legal contentions of the parties and the stipulated facts indicate that common questions exist. All of the class members were participants in the same plan, all satisfied the same requirements of age and service, all received the ASI annual benefit statements and the employee manual, all were employed on the date of the sale of the facility, and none received early retirement benefits. It is true that damages must be determined individually, but they may be determined according to the objective benefit plan formula. Individual damage questions do not preclude a (b)(3) class action, when liability issues are common to the class. 1 H. Newberg, *Class Actions* § 1155a, at 263–64 (1977). Therefore, it is concluded that common issues predominate over the individual issues in this action.

The second determination necessary for certification of a F.R.Civ.P. 23(b)(3) class is whether a class action is superior to other available methods of adjudication. This requires the Court to consider other adjudicative possibilities. A. Miller, *Overview* at 51. *See*, 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1779, at 59 (1972 & Supp.1979, at 53); and 3B *Moore's Federal Practice* ¶ 23.45[3], at 23–337 to 23–338 (2d ed. 1979) ("To determine 'superiority' of the class action the court must forecast the procedural steps necessary to implementing the class action remedy, then consider the alternatives and make a comparison judgment evaluating the options."). Analyzing Count I, individual suits could be brought. However, since there are 186 class members, individual actions would be an inefficient use of judicial machinery. *See also* the reasons supporting the finding that joinder of all parties would be impracticable, at III.B.1., *supra*. A second possibility is consolidation. Here, no other cases involving the same subject matter are pending in other courts. Also, consolidation of the geographically diverse and numerous claims would be difficult at best. There is no administrative agency to which to refer this matter, and this action is not conducive to a test case treatment.

All of the pertinent matters set forth in F.R.Civ.P. 23(b)(3)(A)–(D) must also be considered in determining the propriety of certification as a F.R.Civ.P. 23(b)(3) class. *See*, 3B *Moore's Federal Practice* ¶ 23.45[4.-0–4.5] (2d ed. 1979), 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1780, at 64 (1972). First, is there some reason why it would be in the interest of the individual class members to control the litigation? "Among the factors generally suggested to support individual litigation are a high degree of emotional involvement, extremely large damage claims, and a desire to tailor trial tactics to individual needs." 1 H. Newberg, *Class Actions* § 1160b, at 272 (1977 & Supp.1978, at 53–54). None of these factors are present in this action.

Second, have other suits been brought? This inquiry must also be resolved in favor of class action treatment. There are no suits here to consolidate or enjoin, and class treatment would be preferable.

Third, is it desirable to concentrate the claims? This district is a proper place to bring the action, and a proper place for adjudication of the claims of all the proposed plaintiff class members.

Finally, is the class action manageable? The proposed plaintiff class numbers 186, a number which makes joinder impracticable, but not so large as to make the action unmanageable. All of the members are known, and their addresses may be ascertained. The class is not fluid, since the characteristics of the class members have been objectively defined and the class has been closed. In light of these considerations, it is concluded that the proposed plaintiff class is manageable.

For all of these reasons, it is concluded that the common issues predominate over individual issues, and that a class action would be a superior means of adjudication. Therefore, the proposed plaintiff class satisfies all the requirements of F.R.Civ.P. 23(a) and 23(b)(3).

### D. *The Notice Requirements of Rule 23(c)*

Since this action will be certified pursuant to F.R.Civ.P. 23(b)(3), the notice requirements of F.R.Civ.P. 23(c)(2) are mandatory. 3B *Moore's Federal Practice* ¶ 23.-72, at 23–486 to 23–487 (2d ed. 1979). That section requires that "the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In this action, the parties are able to identify the name and address of each member of the proposed plaintiff class. Considering that there are 186 class members, it is concluded that prepaid first class mail, properly addressed to the last known address of each individual class member, constitutes reasonable notice.

### IV. CONCLUSION

It has been determined that this Court has jurisdiction of Count I of this action pursuant to 28 U.S.C. § 1332.

It has also been determined that joinder of all members of the proposed plaintiff class would be impracticable; that Count I presents common questions of fact or law for determination; that the claims and defenses of the plaintiffs Esler and Stone are typical of those of the class; that the named plaintiffs will adequately represent the class; and that all requirements of F.R. Civ.P. 23(a) are satisfied in Count I.

It has also been determined that the common questions presented in Count I predominate over the individual issues and that a class action is superior to other methods for adjudication of Count I.

For the foregoing reasons, pursuant to F.R.Civ.P. 23(c)(1), it is

ORDERED that the plaintiff class consisting of all members of either the "Before-Amendment Rule of 75" subclass, or the "Before-Amendment Rule of 80" subclass, or the "After-Amendment Rule of 75" subclass, or the "After-Amendment Rule of 80" subclass, as defined *supra*, be, and it is hereby, certified as a F.R.Civ.P. 23(b)(3) class. It is further

ORDERED that on or before January 14, 1980, counsel for the plaintiffs Esler and Stone prepare and submit to this Court, on notice, a proposed communication to all plaintiff class members which satisfies all requirements of F.R.Civ.P. 23(c)(2). It is further

ORDERED that defendants in Count I of this action be, and they are hereby, granted leave to submit to this Court, on notice, on or before January 21, 1980, a proposal for additions, deletions, or amendments to the communication to the plaintiff class proposed by plaintiffs Esler and Stone.