Kenneth J. COWAN, Plaintiff, Appellant,

v.

KEYSTONE EMPLOYEE PROFIT SHARING FUND, Defendant, Appellee.

No. 78–1212.

United States Court of Appeals, First Circuit.

Argued Sept. 15, 1978.

Decided Nov. 21, 1978.

Neil Lynch, Boston, Mass., with whom Herlihy & O'Brien, Boston, Mass., was on brief, for plaintiff, appellant.

Michael J. Liston, Boston, Mass., with whom Robert W. Meserve and Newman & Meserve, Boston, Mass., were on brief, for defendant, appellee.

Before KUNZIG, Judge, U.S. Court of Claims,* CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This is an appeal from the district court's dismissal of Cowan's suit for lack of subject matter jurisdiction. Cowan, whose employment with Keystone ended in November 1974, seeks to establish an interest in Keystone's Profit-Sharing Catch-Up Plan (the Catch-Up Plan), an employee pension benefit plan established in accordance with the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1381, and qualified under I.R.C. § 401.

Cowan's asserted interest in the Catch-Up Plan is based on the following allegations: Cowan, who went to work for Keystone in 1964, was by 1967 a fully vested participant of the Keystone Profit-Sharing Plan. During four of those years, 1970, 1971, 1972 and 1974, Keystone was unable to make its full contribution to this retirement trust. In a summary of the trust's terms issued in 1971, however, Keystone stated that whenever it was unable to make its full contribution in a "lean" year it would replenish the fund in subsequent years. On November 4, 1974, the Keystone Profit-Sharing Plan was amended by the addition of provisions for the Profit-Sharing Catch-Up Plan.[1] Under the Catch-Up Plan Keystone would, in effect, make up the shortfall for 1970, 1971, 1972 and 1974. These additional funds would not, however, be paid to anyone terminated before December 31, 1974, regardless of whether they had been employed during any of the "lean" years.[2]

---

* Sitting by designation.

1. Cowan's complaint suggests that an additional amendment may have been made in August 1975.

2. The beneficiaries of the Catch-Up Plan are persons for whom contributions under the Profit-Sharing Plan were made in the latter half of 1970 or all of 1971, 1972 or 1974, and who were continuously employed through December 31, 1974, or who reach retirement with Keystone after July 6, 1976. The first distributions under the Catch-Up Plan were made in April 1976.

Cowan, in his words, was "forced to resign" from Keystone on November 19, 1974. In connection with his retirement he negotiated a termination agreement with Keystone that included a settlement of his pension benefits. Cowan alleges that during the negotiations Keystone represented to him that there was no possibility that the company would make up the shortfall for 1970–72 and 1974 and concealed from him the fact that the Catch-Up Plan was being formulated.

The termination agreement was signed on November 28, 1974, but final payment of Cowan's benefits did not occur until January 2, 1975. Cowan apparently did not learn of the Catch-Up Plan until 1977. At that time, he requested additional benefits for the years 1970–72 and 1974. This request was denied on the ground that Cowan was neither a participant nor a beneficiary under the terms of the Catch-Up Plan.

Cowan concedes that the terms of the Catch-Up Plan exclude him but contends that he nevertheless is entitled to an interest in it. He alleges that the trustees of the Catch-Up Plan violated their fiduciary duties under ERISA, 29 U.S.C. §§ 1104, 1105,[3] when they denied his request for benefits. He also argues that Keystone's alleged concealment of the Catch-Up Plan in 1974 was fraudulent and that, had he known of the Plan, he would have sought higher termination benefits from Keystone. Thus he maintains that he cannot be held to have waived his rights in the Catch-Up Plan when he signed his termination agreement.

Shortly after filing his complaint Cowan served Keystone with extensive interrogatories probing the terms and operations of its various profit-sharing retirement trusts. Keystone obtained a protective order permitting it not to respond until its motion to dismiss for lack of subject matter jurisdiction was ruled upon. Both the magistrate and the district court agreed, on the basis of memoranda of law and Cowan's complaint,[4] that there was no federal jurisdiction over Cowan's claims. Cowan now appeals from the district court's decision allowing Keystone's 12(b)(1), Fed.R.Civ.P., motion to dismiss.

Cowan asserted federal jurisdiction under a variety of statutory provisions, including a number of provisions in ERISA.[5] The only plausibly relevant section—and the only section that we deal with here—was 29 U.S.C. § 1132.[6] The district court held that

---

**3.** Cowan has also argued that he has a cause of action under I.R.C. § 401. He has not spelled out any plausible theory supporting this position, however, and we can think of none. This section does not appear to create any substantive rights that a beneficiary of a qualified retirement trust can enforce. *Accord, Nolan v. Meyer,* 520 F.2d 1276, 1280 (2d Cir.), *cert. denied,* 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975). We realize that Cowan is also relying on § 401 to argue that Keystone is bound by the representations it made in the 1971 summary of the terms of its Profit-Sharing Plan. But this is not a separate cause of action—it is simply an argument going to whether Keystone should be estopped; the underlying claim would not be a violatio.\ of § 401 but rather a common law action in tort or contract.

**4.** Attached to the complaint were copies of several letters exchanged by Cowan and Keystone in 1977 concerning the Catch-Up Plan. '

**5.** Cowan, appearing largely pro se, originally alleged jurisdiction under 28 U.S.C. § 1332 and

29 U.S.C. § 1303(f), as well as under 29 U.S.C. § 1132. The district court correctly held that there was no diversity and that § 1303(f) applies only to suits against the Pension Benefit Guaranty Corporation. Cowan does not assert these bases of jurisdiction on appeal.

**6.** Section 1132, "Civil enforcement," provides in pertinent part:

"(a) A civil action may be brought—
 (1) by a participant or beneficiary—
 (A) for the relief provided for in subsection (c) of this section, or
 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
 (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 [Liability for breach of fiduciary duty] of this title;
 (3) by a participant, beneficiary, or fiduciary
 (A) to enjoin any act or practice which vio-

jurisdiction under that section was precluded by 29 U.S.C. § 1144,[7] which provides—with certain exceptions—that subchapter I of ERISA (including therefore § 1132) supersedes any and all state laws relating to employee benefit plans covered by ERISA, 29 U.S.C. § 1144(a), but which does not apply to "any cause of action which arose, or any act or omission which occurred, before January 1, 1975," 29 U.S.C. § 1144(b)(1).

The district court reasoned that,

"The specific exclusion in subsection (b)(1) of Section 1144 of causes of action which arose or acts or omissions which occurred prior to January 1, 1975 . . is meaningful only if read as precluding Section 1132 jurisdiction for such causes of action or acts or omissions. I hold, therefore, that Section 1144 bars Section 1132 jurisdiction for causes of action arising or acts or omissions occurring prior to January 1, 1975."

449 F.Supp. at 238. This precluded federal jurisdiction over any cause of action that Cowan might have that arose in the fall of 1974. The court rejected Cowan's alternative argument that his cause of action arose in 1976 and 1977, when Keystone denied him benefits under the Catch-Up Plan yet paid them to others. It granted Keystone's 12(b)(1) motion on these grounds.

Cowan's position on appeal is that the district court erred both in finding that the civil enforcement section of ERISA, 29 U.S.C. § 1132, does not provide a federal forum for litigating causes of action arising before January 1, 1975, and in ruling that no cause of action under ERISA arose after that date. Thus Cowan argues that the court had jurisdiction whether the cause of action arose before or after January 1, 1975. We reject these arguments and affirm the dismissal for want of subject matter jurisdiction.

The requirements for establishing federal court jurisdiction have been addressed frequently by the Supreme Court. In *Bell v. Hood*, 327 U.S. 678, 681–82, 66 S.Ct. 773, 775–76, 90 L.Ed. 939 (1946), the Court held that jurisdiction generally is established by a properly pleaded complaint, "drawn so as to claim a right to recover under the Consti-

---

lates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; ·

(4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) [Reporting of participant's benefit rights; Individual Statement] of this title; . . .

· · · · ·

(d)(1) An employee benefit plan may sue or be sued under this subchapter as an entity.

· · ·

(2) Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter.

(e)(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

(2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

(f) The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action."

7. Section 1144, "Other laws," provides in pertinent part:

"(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

(b)(1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975."

tution and laws of the United States. . . [W]here the complaint . . . is so drawn . . . the federal court, but for two possible exceptions . . . , must entertain the suit." Here Cowan has alleged violations of certain sections of ERISA, 29 U.S.C. §§ 1104, 1105, and has cited the civil enforcement section of ERISA, 29 U.S.C. § 1132, as the basis for federal jurisdiction. Section 1132(a) gives participants [8] and beneficiaries of pension plans the right to sue to redress violations of ERISA and to enforce their rights to pension benefits.[9] Section 1132(d) provides that an employee benefit plan may sue or be sued as an entity, § 1132(f) grants jurisdiction to the federal district courts without regard to the amount in controversy, and § 1132(e) provides that the federal courts have exclusive jurisdiction over all suits except those brought under § 1132(a)(1)(B). On the face of it, therefore, Cowan's complaint states a federal claim.

It is not sufficient, however, that a complaint merely state a federal claim. Under *Bell* federal jurisdiction may be denied if the federal claim is "immaterial and made solely for the purpose of obtaining jurisdiction" or "is wholly insubstantial and frivolous." 327 U.S. at 682–83, 66 S.Ct. at 776; *cf. Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (jurisdiction under 28 U.S.C. § 1343(3) ); *Molina-Crespo v. Califano*, 583 F.2d 572 at 573–574 (1st Cir. 1978) (jurisdiction based on constitutional claims). We feel that these exceptions preclude federal jurisdiction here. In our view, § 1132 confers jurisdiction over claims of the type asserted by Cowan only if they arose after January 1, 1975, and Cowan's substantive claims all arose, if at all, before that date.

The path to this result is, to be sure, somewhat tortuous. Section 1132 on its face appears to grant federal courts jurisdiction to hear all cases against pension plans. Since it does not have an explicit effective date, several courts have reasoned that § 1132 became effective when ERISA was enacted on September 2, 1974. *Reiherzer v. Shannon*, 581 F.2d 1266, 1271 (7th Cir. 1978); *Morgan v. Laborers Pension Trust Fund*, 433 F.Supp. 518, 525 (N.D.Cal.1977). This might suggest that the federal courts have authority to decide any pension disputes arising after that date. But § 1132 merely authorizes federal courts to hear suits involving a broad spectrum of pension claims—it does not purport to create particular causes of action or to define the substantive rights giving rise to such claims. For these we must look elsewhere. It is clear, moreover, that whatever the extent of this jurisdictional grant, it may not exceed the limits established by the constitution, U.S.Const. art. III, § 2. In cases such as this, where there is no diversity jurisdiction and none of the other, more specific bases for article III jurisdiction apply, the primary cause of action sued upon must arise under federal law for the case to be heard in a federal court. *See Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp.*, 348 U.S. 437, 449–59, 75 S.Ct. 489, 99 L.Ed. 510 (1955). State law claims may be entertained only if they arise out of the same nucleus of facts as a federal claim and simply constitute a second ground for relief. *United Mine Workers v. Gibbs*, 383 U.S. 715, 722, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Hurn v. Oursler*, 289 U.S. 238, 245–46, 53 S.Ct. 586, 77 L.Ed. 1148

---

**8.** ERISA defines a participant to include former employees, 29 U.S.C. § 1002(7), and, for the purposes of this analysis, we will assume that Cowan could sue under § 1132 if he could make a minimal showing that his suit arises under federal law. *Cf. Reiherzer v. Shannon*, 581 F.2d 1266 (7th Cir. 1978) (employee retired before ERISA enacted allowed to sue where cause of action arose after enactment); *Martin v. Bankers Trust Co.*, 417 F.Supp. 923, 925 (W.D.Va.1976), *aff'd*, 565 F.2d 1276 (4th Cir. 1977) (§ 1002(7) does not encompass employees terminated before ERISA was enacted);

*Morgan v. Laborers Pension Trust Fund*, 433 F.Supp. 518, 523 (N.D.Cal.1977) (employees terminated before ERISA enacted allowed to sue for breach of fiduciary duties after January 1, 1975).

**9.** It is not clear from the record which of the provisions of § 1132(a) Cowan means to rely on. Because of the manner in which we resolve this case, an extended exegesis of each subsection and its possible applicability here is unnecessary.

(1933). In short, although § 1132 may have become effective on September 2, 1974, federal jurisdiction under that section can exist here only if the substantive claims Cowan now asserts can be identified as arising under other provisions of federal statutory or common law that existed at the time such claims arose.

█ The most obvious federal statutory source in this case would be ERISA.[10] Only certain of ERISA's substantive provisions became effective, however, before 1975. These include the provisions dealing with plan termination insurance, which generally became effective September 2, 1974. 29 U.S.C. § 1114(a). Section 1132 presumably made the federal courts available to enforce these provisions as of September 2. But the majority of ERISA's substantive provisions, including the fiduciary provisions invoked by Cowan, 29 U.S.C. §§ 1104, 1105, did not become effective before January 1, 1975. E.g., 29 U.S.C. §§ 1031(b), 1061, 1086, 1114. Claims could not "arise under" those sections before that date. Thus § 1132 can authorize federal jurisdiction over pre-1975 claims not involving plan termination insurance only if there is some other source of federal law under which such claims can be said to arise. Since no other federal statutes are implicated here, the only possible alternative source is federal common law. See Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456–57, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); Reiherzer, 581 F.2d at 1271 n.14; Martin v. Bankers Trust Co., 565 F.2d 1276, 1279 (4th Cir. 1977).

The legislative history of ERISA does indicate that suits brought under § 1132 are to be treated as arising under federal law in the same manner as suits brought under § 301 of the Labor Management Relations Act, 29 U.S.C. §§ 141–187. H.R.Conf. Rep.No. 93–1280, 93d Cong., 2d Sess., reprinted in [1974] U.S. Code Cong. & Admin. News, pp. 5038, 5107; Reiherzer, 581 F.2d at 1271. Viewed in isolation, § 1132 might thus be argued to grant federal jurisdiction over pre-1975 common law causes of action against pension plans on the ground that they arose under federal common law. To the extent that Cowan's claims are ones of fraud and breach of contract committed in 1974, such a reading would allow the federal courts to entertain his suit. In our opinion, however, this interpretation is precluded by 29 U.S.C. § 1144.

The relevant text of § 1144 has been set forth above.[11] Subsection 1144(b)(1) provides that, "this section [providing for the federal displacement of state law] shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." The most natural reading of this provision is that state substantive law continues to apply to causes of action that arose prior to 1975. Several courts in fact have assumed or suggested that § 1144 therefore precludes federal jurisdiction over pre-1975 causes of action. Martin, 565 F.2d at 1278; Finn v. Chicago Newspaper Publishers' Association—Drivers Union Pension Plan, 432 F.Supp. 1178, 1179 (N.D.Ill.1977); Anderson v. Abex Corp., 418 F.Supp. 5, 6 n. 1 (D.Vt. 1975), aff'd mem., 539 F.2d 703 (2d Cir. 1976). Cowan argues nevertheless that § 1144 should not be read so broadly.

Cowan, asserting that his plan was exempt from state regulation under Mass. Gen.Laws c. 151D, § 8, argues that § 1144 does not apply to his claims since there is no applicable state law for federal law to supersede. But even assuming that Cowan's plan was exempt from state statutory law,[12] the reference to state laws in § 1144 is not limited to statutory law. Section 1144(c) defines "State law" as "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State" (emphasis added). This makes it clear that under § 1144 state common law court decisions as well as any state statutory regulatory

---

10. As noted above, there is no basis for saying that Cowan's claims arise under I.R.C. § 401. See note 3, supra.

11. See note 7, supra.

12. The record gives us no basis for evaluating this assertion. It was not considered by the district court.

schemes were to be effective until 1975. *Cf. Azzaro v. Harnett*, 414 F.Supp. 473, 475 (S.D.N.Y.1976), *aff'd mem.*, 553 F.2d 93 (2d Cir. 1977) (§ 1144 a "cleanup" provision, allowing state regulators to dispose of disputes arising before January 1, 1975). There is no reason to think that, to the extent Cowan's claims arose in 1974, they would not be governed by state common law principles and would not be subject to § 1144.

Cowan also argues that § 1144 was intended only to establish a date for preempting state regulation and was not designed to postpone the effective date of federal court jurisdiction. Since federal jurisdiction over pre-1975 causes of action—other than those involving plan termination insurance—would have to be predicated on federal common law rights, this reasoning requires assuming in effect that Congress intended state and federal common law remedies to coexist until January 1, 1975, when the state laws were to become inoperative. There is no hint that this was its intention, however, in the following explanation in the legislative history:

"Under the [bill] the provisions of title I are to supersede all State laws . . .

"The preemption provision will take effect on January 1, 1975, except that preemption with respect to plan termination insurance will take effect on the date of enactment of this bill. However, it will not affect any causes of action that have arisen before January 1, 1975, and it will not affect any act or omission which occurred before that date."

H.R.Conf.Rep.No. 93–1280, 93d Cong., 2d Sess., *reprinted in* [1974] U.S. Code Cong. & Admin. News, pp. 5038, 5162. This statement does not add significantly to the words of the statute itself. But, to the extent that it acknowledges that preemption was effective January 1, 1975, except with respect to plan termination insurance,

it supports rather than contradicts the interpretation that § 1132 was effective September 2, 1974, only to enforce the ERISA provisions relating to plan termination insurance. We feel that the thrust of this and of § 1144(b)(1) itself is also to limit the application of federal common law to causes of action arising after January 1, 1975. Any other conclusion would mean that claims arising between September 2, 1974, and January 1, 1975, would have to be treated as arising under both federal and—because of § 1144—state common law. Such an interpretation is strained at best and the result—parallel common law remedies—would serve no useful purpose. It would if anything have the detrimental effect of bifurcating federal regulation over pension plans, leaving judges to fashion federal common law principles to govern claims that arose during a brief period of 1974, knowing that Congress deliberately postponed the effective dates of ERISA's substantive provisions until 1975. We think that § 1144 instead precludes federal jurisdiction over any cause of action arising from an "independent, actionable event," *Finn*, 432 F.Supp. at 1179, that occurred prior to January 1, 1975, with the sole exception of acts governed by those substantive ERISA provisions that became effective September 2, 1974.

Since we conclude that federal § 1132 jurisdiction over common law claims is available only for those common law causes of action that arose after January 1, 1975,[13] we must determine the nature of Cowan's claims and when they arose. We feel that his allegations can be reduced to the following: Keystone had some obligation to Cowan under the original Profit-Sharing Plan to make up the 1970–72 and 1974 short-falls in pension contributions; when it excluded him from the Catch-Up Plan, it violated this obligation. This is essentially a breach of contract claim for acts taken in Novem-

---

**13.** We feel that the Seventh Circuit was in error in *Reiherzer v. Shannon*, 581 F.2d 1266 (7th Cir. 1978), when it accepted jurisdiction over a cause of action that arose in November 1974 on the ground that it arose under federal common law. The court raised the jurisdictional issue independently and apparently was unaware of the possible implications of § 1144. *See* 581 F.2d at 1272 n.16. We feel that §§ 1132 and 1144 must be read together.

ber 1974, when the Catch-Up Plan, written so as to exclude employees such as Cowan from the class of beneficiaries, was formally adopted as an amendment to the original Profit-Sharing Plan. Any complaint that Cowan has must be predicated on rights conferred by the original Profit-Sharing Plan to which the Catch-Up Plan was an amendment, and Cowan's claim must be that the first plan was amended in violation of his rights. The fact that payments to beneficiaries of the Catch-Up Plan were not made until 1976 does not alter this analysis. *Cf. Martin*, 565 F.2d at 1279 (no continuous breach after employee terminated and benefits denied). Since the amendment excluding Cowan occurred in 1974, the breach of contract, if any, occurred then too.

Cowan also claims that Keystone concealed the Catch-Up Plan from him when he was negotiating his termination agreement. This claim—essentially one of fraud—also arose in 1974. Although the statute of limitations on a fraud action may not run until the fraud is discovered, this does not determine for present purposes when Cowan's cause of action arose. Section 1144, by excluding federal jurisdiction over "acts or omissions" occurring as well as over causes of action arising before January 1, 1975, makes it clear that the relevant date for jurisdictional purposes on these facts is 1974, not 1977.

Cowan lays great emphasis upon the facts that he received no benefits from Keystone until 1975, that no distributions from the Catch-Up Plan were made until 1976, and that he requested and was denied benefits under the Catch-Up Plan in 1977. Numerous cases hold that a cause of action against a pension plan arises when one is first entitled to receive benefits from the plan, *Keller v. Graphic Systems*, 422 F.Supp. 1005, 1008 (N.D.Ohio 1976), or when a request for benefits is denied, *Reiherzer*, 581 F.2d at 1272; *Kosty v. Lewis*, 115 U.S.App.D.C. 343, 349, 319 F.2d 744, 750 (1963), *cert. denied*, 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964); *Morgan*, 433 F.Supp. at 522 n.5; *cf. Riley v. MEBA Pension Trust*, 570 F.2d 406, 411 (2d Cir. 1977) (continuing violation if benefits suspended rather than completely forfeited); *Winer v. Edison Brothers Stores Pension Plan*, 447 F.Supp. 836, 837 and n.1 (E.D.Mo.1978) (case holding the contrary distinguished). None of these cases is strictly apposite here.

This is not a case in which the application or interpretation of the terms of a pension plan are unclear. In such cases, plaintiff obviously has no cause for complaint until he is refused benefits to which he has some colorable claim, since it cannot be known earlier how the instrument will be interpreted by the trustees. In this case, Cowan received the benefits due under his own termination agreement in 1975, and there is no question that the explicit terms of the Catch-Up Plan gave him no right to receive further benefits in 1976 or 1977. Cowan does not deny this, but he insists that he should be a beneficiary of the Catch-Up Plan. The basic wrong that he complains of thus was not done when he was refused benefits in 1977 but occurred earlier, when the Catch-Up Plan was promulgated. Thereafter the trustees could be expected to administer the Plan in accordance with its terms. To find that Cowan's cause of action arose when the trustees denied his request in 1977 would require holding that they committed a breach of fiduciary duty by not disregarding the explicit terms of the controlling trust instrument. We think the more realistic analysis of Cowan's allegations is that the wrong, if any, was done when the Catch-Up Plan amendment was adopted in 1974.

We conclude that all such claims as Cowan has arose in 1974 and hence arose under state, not federal, law. His action therefore was properly dismissed on jurisdictional grounds, since it presented immaterial or insubstantial federal claims. While this disposition might be called "on the merits" rather than "jurisdictional," *see Bell*, 327 U.S. at 683, 66 S.Ct. 773, we think this case falls within that gray area where, as *Bell* recognized, cases nevertheless may be dismissed for want of jurisdiction. Cowan in any event was not prejudiced by the fact that he was responding below to a motion to dismiss for want of jurisdiction, Fed.R.

Civ.P. 12(b)(1), rather than to a motion to dismiss for failure to state a claim upon which relief may be granted, Fed.R.Civ.P. 12(b)(6). The question of the interaction of §§ 1132 and 1144 and of when Cowan's cause of action arose that were raised by Keystone's 12(b)(1) motion are the same questions that would have been raised by a 12(b)(6) motion. Both parties and the court below addressed these issues.

*Affirmed.*