Ruetta PARIS, Mildred Cawthon and Marge Kane, Plaintiffs-Appellants,

v.

PROFIT SHARING PLAN FOR EMPLOYEES OF HOWARD B. WOLF, INC. and Eugene K. Friesen, Defendants-Appellees.

No. 79–2286.

United States Court of Appeals,
Fifth Circuit.

Feb. 17, 1981.

Rehearing Denied March 24, 1981.

---

James M. Hurst, Arlington, Tex., Dean Carlton, Dallas, Tex., for plaintiffs-appellants.

Tobolowsky & Schlinger, N. Henry Simpson, III, Dallas, Tex., for defendants-appellees.

Before RUBIN, HENDERSON and REAVLEY, Circuit Judges.

HENDERSON, Circuit Judge:

The ultimate issue in this appeal is whether employees who worked for Howard B. Wolf, Inc. or Marcy Lee, Inc. on June 1, 1973, but who resigned or were terminated prior to February 21, 1974, are entitled to benefits under a new profit sharing plan which was adopted on the latter date. The resolution of this issue entails extensive consideration of our jurisdiction in such cases. We conclude that we have jurisdiction, and affirm the district court's determination that the appellants are not entitled to benefits.

In 1960 Howard B. Wolf, Inc. (hereinafter referred to as "the employer") established a "Trusteed Retirement Plan for Employees of Howard B. Wolf, Inc." (hereinafter referred to as "the Retirement Plan"). The employer created the defendant "Profit Sharing Plan for Employees of Howard B. Wolf, Inc." (hereinafter referred to as "the Profit Sharing Plan") on February 21, 1974. The Profit Sharing Plan had a retroactive effective date of June 1, 1973, and the

Retirement Plan was retroactively terminated as of that time. "The terms of the Profit-Sharing Plan provided, inter alia, that benefits which had been held under the . . . Retirement Plan for Participants under the . . . Retirement Plan would be transferred on a fully vested basis to the Profit-Sharing Plan in individual 'former retirement plan accounts' which would be established under the Profit-Sharing Plan." Stipulated Facts ¶ 4.

The plaintiffs are the class of those who were employed by Howard B. Wolf, Inc. and its subsidiary on June 1, 1973, whose employment had been terminated before the adoption date of February 21, 1974. They sued the Profit Sharing Plan and its trustee to recover benefits they claimed under the Profit Sharing Plan. They also allege that during the summer of 1975 certain named plaintiffs requested information about the Profit Sharing Plan, and that the defendant trustee failed to respond within thirty days, in violation of 29 U.S.C.A. § 1132(c). Jurisdiction is predicated on § 502(e) of the Employee Retirement Income Security Act of 1974 (hereinafter referred to as "ERISA"), 29 U.S.C.A. § 1132(e)(1).[1]

The defendants deny that the plaintiffs were entitled to benefits. They do admit that some plaintiffs sought plan information in 1975, but assert that all requests were answered in such a manner as to make clear the claimants were not entitled to benefits. The defendants also dispute ERISA jurisdiction.

All parties filed motions for summary judgment, pursuant to stipulated facts. After the district court notified the parties that the plaintiffs' motion would be granted, the defendants moved the court to reconsider.[2] The plaintiffs failed to respond and, on April 3, 1978, the district court granted summary judgment to the defendants without stating reasons for its decision.

A participant in a benefit plan may bring a civil action to recover benefits. 29 U.S. C.A. § 1132(a)(1)(B). State and federal trial courts have concurrent jurisdiction over such suits. 29 U.S.C.A. § 1132(e)(1). ERISA supersedes "all state laws" relating to covered benefit plans, effective January 1, 1975. 29 U.S.C.A. § 1144(a). It further provides that this "section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S. C.A. § 1144(b)(1).

A congressional grant of jurisdiction to the federal courts not based on the citizenship of a party can only encompass "Cases, in Law and Equity, arising under [the] constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." U. S. Const. art. III, § 2, cl. 1. In *Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp.*, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510, (1955), Justice Frankfurter, speaking for a plurality, said "[i]f . . . Congress merely furnished a federal forum for enforcing the body of contract law which the States provide, a serious constitutional problem would lie at the threshold of jurisdiction," 348 U.S. at 442, 75 S.Ct. at 491, 99 L.Ed. at 515; that is, the case would not be one "arising under" federal law.

With *Westinghouse* in mind, the First Circuit Court of Appeals reads § 1144 as limiting § 1132 jurisdiction to causes of action originating after January 1, 1975. *Cowan v. Keystone Employee Profit Sharing Fund*, 586 F.2d 888 (1st Cir. 1978). *See also Martin v. Bankers Trust Co.*, 565 F.2d 1276, 1278 (4th Cir. 1977). *Contra, Reiherzer v. Shannon*, 581 F.2d 1266 (7th Cir. 1978)

---

1. Hereafter reference is made only to the U.S. C.A.

2. Subsequently Stella Hodkinson sought to intervene as a plaintiff. The defendants opposed, but conceded that she was a "bona fide participant in the profit sharing plan." R. 240. Hodkinson insisted that "[a] ruling with respect to the entitlement of the class members to benefits under the defendant plan could affect as a practical matter the amount of benefits available to [Hodkinson] by proportionately reducing those funds available for profit sharing distributions." R. 235. The court allowed the intervention, then dismissed her action without prejudice.

(criticized in *Cowan*, 586 F.2d at 894 n. 13). In post argument briefs the defendants strongly urge that *Cowan* and *Martin* require a dismissal of this case for lack of jurisdiction.[3]

Because of the difficult constitutional problem that would accompany a conclusion contrary to that reached in *Cowan*, and because ERISA sets a certain date on which federal law supersedes that of the states, *see* 29 U.S.C.A. § 1144(b)(1), it falls our lot to determine precisely when the cause of action arose and what acts of the defendants furnished the basis for suit. Assuming *Cowan* correctly blazed what the court acknowledged was a "tortuous path" leading to the conclusion that ERISA jurisdiction is restricted to cases arising after January 1, 1975,[4] we find that the district court had jurisdiction in this case.[5]

The defendants assert that the governing date is February 21, 1974, when the defendant plan was adopted. They say that any acts or omissions for which they are responsible occurred before the beginning of 1975. They also insist that a cause of action for denial of pension benefits accrues not upon denial of benefits, but rather when the claimant becomes entitled to those benefits. If either position is correct[6] we would face the "serious constitutional problem" noted in *Westinghouse*. Consequently, we consider these two issues separately.

The dilemma stems from the Profit Sharing Plan's retroactive effective date. Section 2.1 of the Profit Sharing Plan provides that "[e]ach employee who is a participant in the trusteed retirement plan will become a participant in the [profit sharing] plan as of the effective date of the plan." In their trial court stipulation, the parties agreed that the controlling issue is whether the plaintiffs were participants "by virtue of the retroactive provisions" of the Profit Sharing Plan. Whatever its meaning may be, no one can, and no one does, seriously deny that the adoption of the Profit Sharing Plan resulted in substantial confusion or that the status of the plaintiffs was fraught with uncertainty.

The defendants maintain that the conduct surrounding adoption of the Profit Sharing Plan must be judged by the legal standards of the time, not by those substituted by ERISA. This is true, but the plaintiffs do not maintain the contrary. The January 1, 1975, effective date of 29 U.S.C.A. § 1144 means that the defendants cannot be held liable for damages arising from acts committed in 1974 so long as those acts comported with state law as it then existed. *See also Cowan; Martin.*

■ The plaintiffs do not rest their case on acts or omissions occurring in 1974 (*viz.* the suit does not challenge the adoption of the Profit Sharing Plan).[7] The action the plaintiffs protest, and the one we must review, is the trustee's 1975 interpretation of the Profit Sharing Plan. Only with that decision did it become clear that the plain-

---

3. In their answer the defendants challenge ERISA jurisdiction as well as the existence of a cause of action.

4. *Bayles v. Central States, Southeast and Southwest Areas Pension Fund*, 602 F.2d 97 (5th Cir. 1979), may foreclose inquiry by us. Bayles applied for benefits in June, 1974, and "soon thereafter" took another job. On the basis of his reemployment the trustees denied him a pension. The court repeatedly noted ERISA jurisdiction but never determined the date the cause accrued. The case was decided on the summary calendar, and it is not clear that the panel dealt with this problem.

5. Although *Cowan* thoroughly and convincingly covers the issue, we emphasize that we do not decide whether the federal courts have jurisdiction over causes of action arising before January 1, 1975. Even if there is federal subject matter jurisdiction in such instances, we must establish when the action matured and when the trustee acted to the detriment of the plaintiff in order to ascertain whether state or federal law controls.

6. Section 1144(a) (*i. e.* federal law) does not apply to causes of action arising before January 1, 1975, nor to a review of acts occurring before that date.

7. It may be that a claim based on denial of benefits under the Retirement Plan would predate ERISA. That question is not before us. The plaintiffs sued for benefits allegedly due them under the Profit Sharing Plan, not the superseded Retirement Plan.

tiffs would be denied benefits.[8] This determination took place in 1975, and, thus, was governed by 29 U.S.C.A. § 1144, and it follows that the federal courts have § 1132 jurisdiction to examine its validity.

The defendants next urge that even if an "essential act" occurred in 1975, the cause of action (if there is one) arose on the adoption date. They reason that a cause of action arises not when an employee is denied benefits, but when he becomes eligible for them. *Knauss v. Gorman*, 433 F.Supp. 1040, 1042 (W.D.Pa.1977), *vacated* 583 F.2d 82 (3d Cir. 1978); *Keller v. Graphic Systems*, 422 F.Supp. 1005, 1008 (N.D.Ohio 1976).

The plaintiffs respond that the cause of action came into existence when the trustee denied the plaintiffs' requests for benefits. There is ample support for that proposition. *Cowan*, 586 F.2d at 895; *Reiherzer v. Shannon*, 581 F.2d 1266, 1272 (7th Cir. 1978). If the plaintiffs are right, the cause arose in 1975, and this court has jurisdiction even under the rule announced in *Cowan*.

According to the terms of the Profit Sharing Plan:

The initial distribution date of a participant who terminates his employment or has his employment terminated by the Employer for any reason other than those specified in [the previous sections, which cover terminations by reasons of retirement, disability or death], shall be the date of termination of his employment even though distribution may be made as of a later date.

Section 6.1(B).[9] The defendants use this provision to further support their assertion that the termination date is controlling. Admittedly, if this argument is correct there would be no jurisdiction.

A cause of action accrues when the events upon which it is based occur. *See, e. g., Atkins v. Crosland*, 417 S.W.2d 150 (Tex.1967). The distinction between eligibility date and the date of denial of benefits was not relevant in any of the cases cited by the defendants. The most thorough discussion of the matter is contained in *Morgan v. Laborers Pension Trust Fund*, 433 F.Supp. 518, 522 n. 5 (N.D.Cal. 1977). We agree that a cause of action does not become a presently enforceable demand until a claim is denied. To hold otherwise

would put an almost intolerable burden on employees covered by pension plans. It would require individuals who are unversed in the law to be constantly vigilant. . . . Moreover, claims filed before a pension actually has been denied might be challenged for lack of ripeness. *Cf. United Public Workers v. Mitchell*, 330 U.S. 75, 86–91, 67 S.Ct. 556 [562–565], 91 L.Ed. 754 (1947).

Requiring piecemeal challenges before an actual denial has occurred would also result in a great waste of judicial resources.

*Id.* We hold that for purposes of ERISA a cause of action does not accrue until an application is denied. *See* quotation from *Cowan* in note 8. *Cf. Kosty v. Lewis*, 319 F.2d 744, 750 (D.C. Cir. 1963), *cert. denied*, 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964) (Statute of limitations does not commence to run until there has been "a clear and continuing repudiation.").

Having concluded there is federal subject matter jurisdiction, we next consider whether the district court erred in denying benefits to the plaintiffs.

Federal common law governs this action. 29 U.S.C.A. § 1144(a). *See Cowan*, 586 F.2d at 894, and *Reiherzer*, 581 F.2d at 1271,

---

**8.** In *Cowan* the court observed:

This is not a case in which the application or interpretation of a pension plan are unclear. In such cases, plaintiff obviously has no cause for complaint until he is refused benefits to which he has some colorable claim, since it cannot be known earlier how the instrument will be interpreted by the trustees.

586 F.2d at 895.

**9.** Although benefits are computed in conformity with the date of employment termination, the Profit Sharing Plan contemplates a delay before eventual payment. § 6.3(A) ("distribution . . . as soon [thereafter] . . . as administratively feasible").

*Martin,* 565 F.2d at 1278, and their discussion of the legislative history. *Compare Martin,* 565 F.2d at 1279, *with Reiherzer,* 581 F.2d at 1271 n. 14.

■ Although the determination of eligibility for pension benefits seems to be a matter of contract law, "the clear weight of federal authority" mandates that the trustee's determinations of eligibility are to be upheld unless arbitrary or capricious. *Bayles v. Central States, Southeast and Southwest Areas Pension Fund,* 602 F.2d 97, 99 and 100 n. 3 (5th Cir. 1979); *Bueneman v. Central States, Southeast and Southwest Areas Pension Fund,* 572 F.2d 1208, 1209 n. 3 (8th Cir. 1978). *But cf. Ramirez v. Lowe,* 504 F.Supp. 21 (S.D.Tex. 1979), *aff'd mem.,* 639 F.2d 306 (5th Cir. 1980) (vesting).

■ The trustee's decision withstands scrutiny under this standard. *Contra, Tucci v. Edgewood Country Club,* 459 F.Supp. 940, 941–42 (W.D.Pa.1978) (similar facts, suspect termination; no enunciated standard of review). He treated all similarly situated persons the same. *See Bayles,* 602 F.2d at 100; *Bueneman,* 572 F.2d at 1210. The Profit Sharing Plan's resources are still dedicated to the participants; the trustee's policy will direct money to those who were employed on the adoption date. *See* note 2. "The trustees of [a] pension fund may properly enforce pension plan rules limiting pension benefits if an alternative would require inappropriate or unanticipated costs to the fund so as to potentially limit resources available to the proper beneficiaries of a trust." *Id.; accord, Sparta v. Lawrence Warehouse Co.,* 368 F.2d 227, 228 (3d Cir. 1966) (diversity action apparently applying general principles of law).

Certain individual plaintiffs also complain that the trustee did not respond to their requests for information. The defendants deny this allegation. No affidavits were submitted to the trial court, so there was clearly an issue of fact. There was not, however, a "genuine issue as to any material fact" such as would necessitate a remand. F.R.Civ.P. 56(c).

The stipulation states that "the issue to be determined" is whether the plaintiffs are entitled to benefits. Not only did the plaintiffs allow the question of failure to respond to the request for information to escape the trial court's attention, they did not raise it in this court except in their brief in reply to the defendants' post argument brief.

ERISA's civil enforcement section authorizes the courts to enforce 29 U.S.C.A. § 1024(b)(4), which requires the administrator [10] to furnish certain information upon the written request of a participant. Specifically, 29 U.S.C.A. § 1132(c) provides that "[a]ny administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant ... may in the court's discretion be personally liable to such participant ... in the amount of up to $100 a day from the date of such failure or refusal ...."

■ The short answer may be that since the plaintiffs were not participants they were not entitled to any information. However, at the time of this request their status was far from clear, and we are not sure that those who may be entitled to benefits should be denied an opportunity to determine their entitlement. The decision to grant relief under 29 U.S.C.A. § 1132(c) is committed to the discretion of the trial judge. We take his disposition of this case as a decision not to grant relief. The plaintiffs have not attempted to demonstrate that they were prejudiced by the alleged failure to respond, and we cannot say that the district court abused its discretion.

The judgment is AFFIRMED.

---

**10.** "Administrator" is defined at 29 U.S.C.A. § 1002(16)(A).