E. D. HAYDEN, Plaintiff-Appellee,

v.

TEXAS–U.S. CHEMICAL COMPANY, Defendant-Appellant.

No. 81–2248.

United States Court of Appeals, Fifth Circuit.

Aug. 6, 1982.

Baker & Botts, Houston, Tex., Joseph R. Weeks, for defendant-appellant.

Benckenstein, McNicholas, Oxford, Radford & Johnson, Guy N. Goodson, Beaumont, Tex., for plaintiff-appellee.

Before DYER,* JOHNSON and WILLIAMS, Circuit Judges.

JOHNSON, Circuit Judge:

Texas-U.S. Chemical Company seeks a reversal of the judgment entered in favor of its former employee, E.D. Hayden, on his claim for benefits under the company's permanent and total disability benefit plan. The judgment must be vacated, but for reasons other than those pressed by the company: it is not possible to discern the basis for the judgment in the findings of fact and conclusions of law set forth by the district court. We remand for reopening of proceedings and reconsideration of Hayden's claim.

### I.

In September 1967 Hayden took a job as a laborer in Texas-U.S. Chemical's Port Neches, Texas rubber manufacturing plant. Hayden was hired over the objections of company physicians: his pre-employment physical examination disclosed an abnormality in the vertebral structure of his lower back which created a predisposition to serious injury from the strains associated with hard manual labor. Hayden sustained several such injuries in the course of his employment with Texas-U.S. Chemical; because of those injuries, his condition worsened into lumbar disk syndrome aggravated by secondary arthritis. He refused, however, to undergo the surgery recommended by company and private physicians, out of a fear that unsuccessful surgery would leave him disabled.

Hayden was laid off in January 1975 as a result of a general reduction in force. In May 1975, he underwent the first of what would become a series of corrective operations. Notice to Texas-U.S. Chemical of his surgery resulted in a change of his employment status from "laid off" to "medical leave of absence." Hayden remained in that status until he was terminated for medical reasons in June 1978.

In the fall of 1978, Hayden applied for benefits under the company's Permanent and Total Disability Plan (the Plan).[1] Hayden's claim for benefits was denied on the grounds that because his disability occurred while he was in layoff, rather than active, status, and because he had in any case failed to show his disability to be permanent, he had failed to satisfy the eligibility requirements set out in the Plan.

Hayden subsequently initiated legal action charging Texas-U.S. Chemical with breach of contract through a denial of benefits, in contravention of the terms of the collective bargaining agreement. The suit proceeded as one governed wholly by Texas law[2] until the day of trial, when Hayden

---

* Circuit Judge of the Eleventh Circuit, sitting by designation.

1. The Plan, in existence throughout the course of Hayden's employment with Texas-U.S. Chemical, was at the time of his application for benefits a part of the collective bargaining agreement governing labor relations between Hayden's union, the Chemical and Atomic Workers International, and Texas-U.S. Chemical.

2. In *Malone v. White Motor Corp.*, 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978), a plurality of the Supreme Court held that by express provision in § 10 of the Welfare and Pension Plans Disclosure Act of 1958, 29 U.S.C. § 309 (repealed as of January 1, 1975 by the Employee Retirement Income Security Act of

first raised his claim to relief under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* The company strenuously objected to Hayden's interjection of a federal ground for relief, and for sound reason: its defense rested in large measure on the deference accorded private employment agreements under Texas law.

Texas-U.S. Chemical's first line of defense was drawn from Art. V ¶ 3 of the Plan, which states that

This Plan is entirely voluntary on the part of the Company. An employee acquires neither a vested nor a contractual right hereunder . . . .

Joint Exhibit at DF–7. The company interpreted this provision to mean that its payment of benefits under the Plan was wholly discretionary, and pointed to Texas cases holding that "benevolent claims" could not be made legally enforceable in the face of contract provisions expressly denying contractual liability therefore. *Parrott v. Brotherhood of Railroad Trainmen*, 85 S.W.2d 306 (Tex.Civ.App.—Texarkana 1935, writ ref'd n.r.e.); *Rieden v. Brotherhood of Railroad Trainmen*, 184 S.W. 689 (Tex.Civ. App.—San Antonio 1916, writ ref'd n.r.e.).

■ The company's fall-back argument also relied on the limited degree of regulation imposed by Texas law on employee benefit plans. Art. II ¶¶ 1 and 3 [3] and Art. V ¶ 1 [4] of the Plan placed authority to determine eligibility for benefits in Texas-U.S. Chemical alone; Art. III ¶ 1(b) disallowed benefits to covered employees whose disabilities occurred while laid off.[5] Under Texas law, determinations of benefit eligibility made under such provisions are "not subject to attack in the courts in the absence of a showing of fraud or bad faith," *Long v. Southwestern Bell Telephone Co.*, 442 S.W.2d 462, 464 (Tex.Civ.App.—San Antonio 1969, writ ref'd n.r.e.); *accord, Marsh v. Greyhound Lines, Inc.*, 488 F.2d 278, 280 (5th Cir. 1974) (applying Texas law). The company claimed that the abundance of evidence in support of its decision conclusively eliminated the possibility that its refusal to pay Hayden's claim was motivated by either fraud or bad faith.[6]

1974, Pub.L. 93–406, Title I, § 111(a)(1), 88 Stat. 851), the Congress recognized and preserved a state role in the regulation of employee welfare and pension benefit plans obtaining even in the case of plans integrated with otherwise federally-governed collective bargaining agreements. The diffusion of regulatory authority sanctioned by the Disclosure Act was sharply curtailed by the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1001 *et seq.* (West 1975), *see Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 1907 n.23, 68 L.Ed.2d 402 (1981); part II, *infra.*

3. Art. II ¶ 1 states, in pertinent part

An employee of the Company who, in the Company's judgment, becomes permanently and totally disabled in accordance with the regulations of the Plan . . . is eligible to receive benefits. . . .

Joint Exhibit 1 at DF–2. Art. II ¶ 3 provides

The Company alone shall determine what constitutes Permanent and Total Disability, when the same commenced, and may at any time reverse or alter any such determination. *Id.*

4. Art. V ¶ 1 provides, in pertinent part

Any action taken or any decision, determination, or election made by the Board of Directors, or by any such person or persons designated as provided above, with respect to any question which may arise in connection with the interpretation or administration of this Plan shall be final, conclusive and binding on all employees and all others in any manner concerned.

Joint Exhibit 1 at DF–7.

5. Art. III ¶ 1(b) states, in pertinent part

No benefits shall be allowed or paid under this Plan . . . if [the employee's] disability commenced while he was engaged in military or naval service in time of war or while absent from work due to layoff. . . .

Joint Exhibit 1 at DF–5.

6. Texas-U.S. Chemical argued that the integrity of its decision should be evaluated in view of the information put before its designated Plan administrator at the time of his decision. The administrator testified that he rejected Hayden's claim because he knew Hayden to have worked until laid off, and because the physician's certification of disability accompanying Hayden's claim stated that Hayden's disability had begun in March 1975, while Hayden was on layoff, and was of "indeterminate," rather than permanent, duration. Hayden argued there to be ample evidence in Texas-U.S. Chemical's files of his worsening condition, of company physicians' conclusions that he was

The case was tried without a jury. Hayden's post-trial brief more clearly set out his theories of the company's liability under ERISA; the company continued to claim that Texas law alone could be applied. The district court failed to resolve this dispute in rendering judgment. Although it concluded as a matter of law that

> The Permanent and Total Disability Plan of Defendant is a welfare benefit plan as defined in the Employee Retirement Income Security Act of 1974 (ERISA), Section 1002. As a welfare benefit plan, the plan administrators and fiduciaries are subject to the reporting and disclosure requirements, the fiduciary responsibilities and the plan administration and enforcement obligations provided for by ERISA.

Record Vol. I at 179, and based its award of attorneys' fees to Hayden in part on ERISA's provision for such an award, ERISA § 502(g), 29 U.S.C. § 1132(g), it made no finding that Texas-U.S. Chemical's denial of benefits to Hayden violated any provision of ERISA. Judgment rested instead on an unsupported, conclusory *factual* finding that, though the Plan could be terminated unilaterally by the company, and though it specifically denied the existence of contractual claims to benefits, a "right to benefits under the plan did accrue [to Hayden] while an employee of [Texas-U.S. Chemical]," *id.* at 177, and the denial of benefits was in bad faith, *id.* at 178. Hayden was awarded damages and attorneys fees in excess of $30,000.

Texas-U.S. Chemical appeals, contending the district court's decision that Hayden had an enforceable claim to benefits to be without basis in law, and the conclusion that the refusal to pay was in bad faith to be without basis in fact. Hayden argues that the award should be upheld by identification of an ERISA-granted right to those benefits and a finding that that right was abridged.

This Court can do neither. The district court's failure to resolve the dispute over applicable law was fatal. The case must be reconsidered.

## II.

■ Rule 52(a), Fed.R.Civ.P., requires that "[i]n all actions tried upon the facts without a jury . . ., the court shall find the facts specially and state separately its conclusions of law thereon. . . . " Clear and adequate factual findings and complete legal analysis in the district court lay the foundation essential to sound appellate review. Without them this Court cannot know whether the district court's reasoning was correct. They are absent here.

The paucity of legal analysis and the absence of specific, supporting factual determinations leaves this Court unable to identify, let alone evaluate, the basis for the district court's decision. Nor may this Court, as Texas-U.S. Chemical urges, assume it to be in Texas law. Hayden's claim to relief under ERISA does not state merely an alternative theoretical formulation of his cause which may fairly be disallowed if late presented, *cf. Bettes v. Stonewall Insurance Co.,* 480 F.2d 92 (5th Cir. 1973). Rather, ERISA, if applicable, displaces the otherwise governing state law. *Alessi* 101 S.Ct. at 1906; *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966, 969–74 (5th Cir. 1981); *see Delta Airlines v. Kramarsky,* 666 F.2d 21, 24–25 (2d Cir. 1981), *modifying* 2nd Cir. 650 F.2d 1287, *prob. juris. noted* —— U.S. ——, 102 S.Ct. 1968, 72 L.Ed.2d 439 (1982); *Murphy v. Heppenstall Co.,* 635 F.2d 233, 237 (3d Cir. 1980), *cert. denied,* —— U.S. ——, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982); *Kapuscinski v. Plan Administrator, etc.,* 658 F.2d 427, 430 (6th Cir. 1981); *Dependahl v. Falstaff Brewing Co.,* 653 F.2d 1208, 1215 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981); *Standard Oil Co. of California v. Agsalud,* 633 F.2d 760, 763, 765 (9th Cir. 1980), *affirmed,* 454 U.S. 801, 102 S.Ct.

---

unfit for continued employment, and of those physicians' recommendations of surgery. He construed those records as proof of the origin of his disability in injuries sustained in the course of his work for Texas-U.S. Chemical, and characterized Texas-U.S. Chemical's disregard of the information in its files as evidence of bad faith.

79, 70 L.Ed.2d 75 (1981). The Congress has stated, by a preemptive provision at the heart of ERISA, its intention to clear the field of employee benefit plan regulation for federal control, ERISA § 514(a), 29 U.S.C. § 1144(a);[7] *Alessi* 101 S.Ct. at 1906; *Woodfork* at 970; *Delta*, 666 F.2d at 24–25; *Dependahl* at 1215; it has, by this clear expression, authorized the federal courts to formulate a federal common law of substantive rights filling the interstices of ERISA's statutory provisions. *Woodfork* at 973; *Paris v. Profit Sharing Plan*, 637 F.2d 357, 361 (5th Cir.), *cert. denied*, 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981); *Murphy* at 237; *Dependahl* at 1216; *compare Delta Airlines v. Kramarsky*, 650 F.2d at 1304. It is essential that the question of ERISA's application be determined. The case cannot proceed without resolution of this threshold issue. *Compare Woodfork* at 969–74.

It will be necessary, then, for the district court to consider and expressly to decide whether Hayden's claim is governed by ERISA. As an initial matter, it must determine whether the plan falls within any exemption to ERISA's supercedure provision, *see, e.g., Alessi* 101 S.Ct. at 1906–07; *Delta*, 666 F.2d at 24–26; *Kapuscinsky* at 429–30; *Standard Oil* at 764–65,[8] or whether Hayden's cause of action arose or is occasioned by acts or omissions occurring before the January 1, 1975 effective date of that provision.[9] *See Woodfork* at 970–74; *Paris* at 360–61. If those matters are resolved in favor of ERISA coverage, it will be necessary to construe the plan provisions on which Texas-U.S. Chemical relies in light of ERISA's substantive provisions; if no

---

7. That section states:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.
Subsection (c) defines its sweep in broad terms:

For purposes of this section:
(1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. A law of the United States applicable only to the District of Columbia shall be treated as a State law rather than a law of the United States.
(2) The term "State" includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter.
ERISA § 514(c), 29 U.S.C. § 1144(c).

8. ERISA § 4(b), 29 U.S.C. § 1003(b), exempts from ERISA's coverage

any employee benefit plan if—
(1) such plan is a governmental plan (as defined in section 1002(32) of this title);
(2) such plan is a church plan (as defined in section 1002(33) of this title) with respect to which no election has been made under section 410(d) of Title 26;
(3) such plan is maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws;
(4) such plan is maintained outside of the United States primarily for the benefit of persons substantially all of whom are nonresident aliens; or
(5) such plan is an excess benefit plan (as defined in section 1002(36) of this title) and is unfunded.
A plan's failure to qualify for that exemption renders inapplicable as well the more significant of the plan exemptions listed in § 514(b), 29 U.S.C. § 1144(b):

(2)(A) Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.
(B) Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

9. ERISA § 514(b)(1), 29 U.S.C. § 1144(b)(1), provides that:

This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.

statutory provisions are found directly to govern, the district court must acquit its obligation to develop and apply federal common law consonant with the objectives established by that comprehensive scheme. *Woodfork* at 973 n.8; *Murphy* at 237–39; *Dependahl* at 1217. Specifically, the district court must address the construction to be given under ERISA to the plan's denomination as "voluntary," *see, e.g., Trustees, Atlanta Ironworkers Pension Fund v. Southern Stress Wire Corp.,* 509 F.Supp. 1097 (N.D.Ga.1981); *Calhoun v. Falstaff Brewing Co.,* 478 F.Supp. 357 (E.D.Mo. 1979), and the force to be allowed its disclaimer of creation of contractual rights, *see* ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); *Woodfork* at 972. If the company's decision is found to be susceptible to legal challenge, that decision must be reviewed for arbitrariness or capriciousness. *Paris* at 362; *Bayles v. Central States, Southeast and Southwest Areas Pension Fund,* 602 F.2d 97, 99, 100 n.3 (5th Cir. 1979).

If the district court determines that ERISA does not govern Hayden's claim, its decision must be rendered under Texas law. A decision in favor of Hayden under Texas law must be accompanied by, *inter alia,* a reasoned interpretation of Texas law demonstrating that, notwithstanding Plan provisions to the contrary, a legally enforceable right to benefits did accrue to Hayden.

The questions remaining are many. It will be necessary to reopen proceedings for the advice and assistance of counsel on the issues we have identified, and on any other issues relevant to resolution of Hayden's claim believed pertinent by the parties. We leave, however, to the discretion of the trial court whether a fuller development of the factual basis for a decision requires acceptance of additional evidence.[10]

### III.

The judgment is vacated and the case remanded for further proceedings consistent with this opinion.

10. In light of our disposition on this appeal, we find it unnecessary to reach the other issues raised by the parties. Those issues, to the extent they survive vacation of judgment, are open on remand.

VACATED AND REMANDED WITH INSTRUCTIONS.